Anna **VALMONTE, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Cesar PERALES, as Commissioner of the New York State Department of Social Services, and Shirley Harvey Cook, as Commissioner of the Orange County Department of Social Services, Defendants.**

**No. 91 Civ. 2156 (KC).**

United States District Court, S.D. New York.

March 31, 1992.

---

Carolyn A. Kubitschek, Lansner & Kubitschek, New York City, for plaintiffs.

Judy E. Nathan, Asst. Atty. Gen., New York City, Ellen Tuckman, Co. Atty. of Orange County, Goshen, N.Y., for defendants.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

Plaintiff Anna Valmonte, whose name is listed in the New York State Central Register of Child Abusers, brings this action pursuant to 42 U.S.C. § 1983 challenging the constitutionality of Central Register's procedures. Currently pending before this Court is defendants' motion to dismiss the complaint. For the reasons that follow, defendants' motion is granted in part and denied in part.

### Background

*The Central Register*

Article 6, Title 6 of the New York Social Services Law ("SSL") governs the recording and investigation of reports of suspected maltreatment (abuse) of children, and the administrative review process by which substantiated reports may be reviewed and, where appropriate, expunged. The Central Register maintains reports of child abuse as one part of a larger system to ensure the safety of children in New York State.

The Central Register procedures are triggered when parties report to the Central Register cases of suspected child abuse or neglect. SSL § 413 places an affirmative duty on designated persons and officials to report to the Central Register when "they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." Included as mandatory reporters are, *inter alia*, school officials and registered nurses. *Id.* Other persons who are not mandatory reporters may also report suspected abuse or maltreatment. The State Department of Social Services ("state DSS") must complete a written report about the suspected abuse or maltreatment and must give the report to the local child protective service within forty-eight hours of the receipt of the initial communication of abuse. SSL § 415.

Upon receipt of a report, the local child protective service must investigate the circumstances and "determine, within 60 days, whether the report is 'indicated' or 'unfounded.'" SSL § 424(7). A report is indicated "if an investigation determines that some credible evidence of the alleged abuse or maltreatment exists." SSL § 412(11).[1] All other reports are "unfounded." SSL 412(10). If a report is expunged, according to procedures outlined below, or is unfounded, state DSS deletes it from the Central Register and destroys all records related to the report. SSL §§ 422(5), 422(8)(c)(i). In any event, state DSS must expunge the report from the central register ten years after the youngest child referred to in the report turns eighteen years of age. SSL § 422(6).

When the subject of a report ("subject") is notified that the report is "indicated,"[2] he or she has 90 days in which to request state DSS to expunge the report from the Central Register. SSL § 422(8)(a)(i). When State DSS receives a request that a report be expunged, it must obtain from the local child protective service all material pertinent to the report. SSL § 422(8)(a)(ii).

Following receipt of the material, State DSS conducts a two step review of the report. State DSS must determine first whether there is some credible evidence that the subject committed the acts charged. SSL § 422(8)(a)(ii). If State DSS concludes that there is some credible evi-

---

1. The SSL does not provide a definition for the "some credible evidence" standard. However, it is clear from the statutory scheme that the "some credible evidence" standard is lower than the "fair preponderance of the evidence" standard. *Compare,* e.g., SSL § 424–a(1)(e)(v) *with* SSL § 424–a(2)(d).

2. SSL § 422 does not make clear when the subject of an indicated report is notified of his or her indicated status. However, from the structure of the statute it appears that the subject is notified soon after his or her report is indicated.

dence that the subject committed the acts charged, state DSS must then ascertain whether the acts could be relevant and reasonably related to the subject's participation in child care. *See* SSL § 422(8)(a)(ii). State DSS must deny the expungement request if both parts of its review are answered in the affirmative. If State DSS finds only that there is some credible evidence that the acts occurred, but does not conclude that the acts are relevant and reasonably related to the subject's participation in child care, State DSS does not expunge the report, but will not disclose it to child care employers and licensing agencies (collectively "child care employers"), who are usually entitled to obtain information from the Central Register. SSL § 422(8)(a)(iv).

If state DSS does not expunge the report, it will schedule an administrative "fair hearing" to review the report. SSL § 422(8)(b)(i). At the hearing, the child protective service must prove that there is some credible evidence that the subject committed the acts constituting the abuse or neglect. SSL §§ 422(5), 422(8)(b)(ii), (8)(c). If the child protective service satisfies its burden, the Commissioner of state DSS must then determine whether the acts could be relevant and reasonably related to the subject's participation in child care. SSL § 422(8)(c)(ii).

If the Commissioner decides not to expunge the report, the subject can commence a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules to challenge the fair hearing decision. The standard of review used by the reviewing court is whether there is substantial evidence in the record to support the commissioner's decision. CPLR Article 78.

The information contained in the Central Register is generally confidential. SSL § 422(4). However, under carefully restricted circumstances, certain parties may inquire of state DSS whether the Central Register contains an indicated report on a specific person. *See* SSL §§ 422(4), 424–a(1)(a), (b), (c). If, for example, a person applies to a child care agency for a job, the agency must make an inquiry to the Central Register to determine whether an indicated report on the person exists. SSL § 424–a(1). If an indicated report does exist, the Central Register notifies the agency of this fact. *See id.*

The presence of an indicated report does not automatically bar employment in child care. The employer may approve the application or hire the subject so long as it indicates in the applicant's file its reasons for hiring the subject despite the report. SSL § 424–a(2)(a). If the employer determines not to hire the subject, it must advise the subject of its reasons. SSL 424–a(2)(b)(i). If the reasons include the existence of the indicated report, the subject can request another fair hearing to review the relevance of the report. SSL § 424–a(2)(c). At this fair hearing, the child protective service must show "by a fair preponderance of the evidence" that the subject committed the acts referred to in the report. SSL § 424–a(2)(d). If the child protective service is unable to satisfy its burden of proof, the report is not expunged, but is not revealed to certain parties, *inter alia*, child-care employers, upon future inquiries. In addition, the employer is notified about the results of the hearing and is requested to reconsider its earlier decision not to hire the subject of the indicated report. SSL § 424–a(2)(e).

### Allegations in the Complaint

Defendant Cesar Perales is the Commissioner of state DSS, which oversees the Central Register. Defendant Shirley Harvey Cook is the Commissioner of the Orange County Department of Social Services ("county DSS"), which is the local child protective services agency involved in plaintiff Anna Valmonte's case.

Anna Valmonte is the mother of three children. Amended Complaint [hereinafter Compl.] ¶ 4. Her youngest child, Jasmine, was born in 1978, became Valmonte's foster child in 1980, and was adopted by Valmonte and her husband in 1988. Compl. ¶¶ 4, 12.

On November 30, 1989, Valmonte hit Jasmine in the face. Compl. ¶ 16. Valmonte alleges that she did not harm Jasmine and

that Jasmine did not require medical treatment. *Id.* On December 1, 1989, a report of suspected abuse was made to the Central Register. Compl. ¶ 17. County DSS employees investigated the charges, and on or about February 8, 1990 "indicated" the report of excessive corporal punishment and inadequate guardianship by Valmonte. Compl. ¶¶ 19, 21. Valmonte then requested that defendant Perales expunge the report, but Perales denied the request. Compl. ¶ 24. Subsequently, on December 3, 1990, Perales held a fair hearing on Valmonte's request for expungement. Compl. ¶ 25. Following the hearing, defendant Perales issued a decision in which he determined not to expunge the report because he found that there was some credible evidence that Valmonte committed the acts charged, and that these acts were reasonably related to employment by a child care agency, to the adoption of a child, or to the provision of foster care. Compl. ¶¶ 26, 27.

On or about February 2, 1990, defendant Cook commenced a proceeding against Valmonte in Family Court, Orange County. Compl. ¶ 20. The Family Court petition alleged that Valmonte had abused Jasmine when Valmonte struck her, and that Valmonte neglected her other two children. *Id.* On April 3, 1990, the Family Court proceeding was adjourned in contemplation of dismissal, on the condition that the Valmonte family receive counseling. Compl. ¶ 23.

Valmonte alleges that the indicated report will remain in the Central Register until October, 2006. Compl. ¶ 28. She also claims that the report will be "subject to inspection and review by more than 20 different categories of individuals and organizations" and will preclude "[p]laintiff and

members of the plaintiff class ... from working with children." Compl. ¶¶ 28, 31.

Valmonte commenced this action pursuant to 42 U.S.C. § 1983 on March 28, 1991. Her amended complaint contains eight causes of action which will be discussed below. As far as relief is concerned, Valmonte asks this Court to: "1. Declare that defendants' practice[s] [vis-a-vis the Central Register] violate the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution; and 2. Preliminarily and permanently enjoin defendants from maintaining and/or disseminating records which state that plaintiffs are abusive or neglectful parents; and 3. Direct defendants to expunge all their records on plaintiff and the members of the plaintiff class; or, in the alternative 4. Direct defendants to hold new administrative hearings, employing the proper legal standards for child abuse and neglect and permitting consideration of all relevant evidence; and 5. Preliminarily and permanently enjoining defendants from using lesser standards of conduct than those defined in the New York Family Court Act in determining whether reports of suspected child abuse and neglect are indicated or unfounded; and 6. Preliminarily and permanently enjoining defendants from refusing to consider evidence as to misapplication of legal standards and parental rehabilitation at administrative hearings; and 7. Award plaintiffs costs and attorney's fees pursuant to 42 U.S.C. § 1988; and 8. Grant plaintiff[ ] and members of the plaintiff class such other and further relief as may be deemed just and proper."[3] Compl. Prayer for relief.

### Discussion

#### I. Valmonte's First Cause of Action

■ In her first cause of action, Valmonte alleges that defendants interpret

---

3. Plaintiff and defendants have made references in their briefs to various affidavits and other documents. However,

> [i]t is abundantly clear that the Court may not consider matters outside of the complaint in ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6) [*Festa v. Local 3 International Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir.1990).] To the extent the Court considers such materials, "'the motion shall be treated as one for summary judgment and

disposed of as provided in Rule 56....'" *Festa, supra,* 905 F.2d at 37–38 (quoting Fed. R.Civ.P. 12(b)). In the case at bar, the Court will not consider matters outside the complaint, and thus declines to convert the present motion into one for summary judgment.

*Fort Wayne Telsat v. Entertainment & Sports Programming Network,* 753 F.Supp. 109, 113 n. 4 (S.D.N.Y.1990).

New York state child abuse statutes in an unconstitutionally overbroad manner, and, as a result, have labelled Valmonte a child abuser even though she is not an unfit parent. Valmonte asserts that this overly broad interpretation violates her right to raise her children free of state interference, and thus is contrary to the first, fifth, and fourteenth amendments to the United States constitution.

Valmonte's overbreadth claim cannot be read to challenge the constitutionality of particular New York State statutes or regulations as Valmonte's complaint does not mention any.[4] Thus, it appears that what Valmonte is really alleging in her first cause of action is that defendants have labelled Valmonte a child abuser based on defendants' allegedly unpublished "secret, [and] clandestine standards" of what constitutes child abuse for Central Register purposes.[5] *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss at 10–16.

Assuming that Valmonte's allegations are true, as we must in deciding this motion to dismiss, we find that they state a cause of action. "The notion of due process requires that sanctions be imposed on individuals only if they could reasonably have known in advance that their questioned behavior had been proscribed." *DiLeo v. Greenfield*, 541 F.2d 949, 953 (2d Cir.1976); *accord Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). If defendants in the instant case have indeed "indicated" Valmonte's report based purely on secret standards which they do not publish, Valmonte could not have known that her behavior was proscribed. For these reasons defendants' motion to dismiss the first count of the complaint is denied.

## II. Valmonte's Second, Fourth, and Sixth Causes of Action

Valmonte's second, fourth, and sixth causes of action can basically be distilled into two general claims. First, Valmonte complains that the state's publication to prospective child-care employers and others that Valmonte is the subject of an indicated report violates her rights to liberty, reputation, privacy, and procedural due process. Second, Valmonte asserts that the state's mere maintenance of a central register that contains her indicated report also violates her constitutional rights to liberty, reputation, privacy, and procedural due process. We will deal with each of Valmonte's contentions *seriatim*.

### A. Publication to Child Care Agencies and Others that Valmonte is the Subject of an Indicated Report

#### 1. Ripeness

▇ Nowhere in Valmonte's complaint does she assert that defendants have actually publicized that she is the subject of an indicated report. Thus, a threshold issue that we must determine before discussing the substance Valmonte's first claim is whether this claim is ripe for review. In *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), a number of the plaintiffs, who were Texas judicial officers who wanted to run for higher judicial office, challenged the constitutionality of provisions in the Texas constitution that automatically caused the resignation of judicial officers who announced their candidacies for higher judicial office. *Id.* at 960–61, 102 S.Ct. at 2842. Although the automatic resignation provision inhibited these

---

**4.** Indeed, at two points in her brief, Valmonte concedes that the standards for parental unfitness contained in the Family Court Act § 1012 are not unconstitutional for overbreadth or vagueness. *See* Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss at 26 ("Plaintiff does not challenge the constitutionality of any of the standards of parental fitness contained in the Family Court Act § 1012, defining child abuse and neglect."); *id.* at 14 ("Parents in New York State *know* what sort of behavior constitutes the type of child abuse or neglect which can lead to the institution of child protective

proceedings against them in New York Family Court and result in the possible loss of custody of their children." (emphasis added)).

**5.** To the extent that plaintiff's first cause of action can be read as alleging that defendants' interpretation and application of New York State child abuse statutes is incorrect as a matter of state law, plaintiff's claim must be dismissed for the reasons discussed below in part IV of this opinion.

plaintiffs from announcing their candidacies, the Supreme Court found these plaintiffs' allegations "sufficient to create an actual case or controversy" *id.* at 962, 102 S.Ct. at 2843. The Court stated that because "[the plaintiffs] ha[d] alleged in a precise manner that, but for the sanctions of the constitutional provision they seek to challenge, they would [have] engage[d] in the very acts that would trigger the enforcement of the provision," the plaintiffs claims were ripe for review. *Id.*

In the instant case, Valmonte asserts that she "wish[es] to obtain jobs in child care, education, and other fields involving children." Compl. ¶ 29. Valmonte complains, however, that were she to apply for such jobs, state law would require the employers to call the central register for information about Valmonte, and would also require the central register to publicize to the employers that Valmonte is the subject of an indicated report. Compl. ¶¶ 29, 30. Reading the complaint in the light most favorable to the Valmonte, Valmonte is asserting that but for the automatic application of the Central Register laws that would inform prospective child-care employers that Valmonte is the subject of an indicated report, Valmonte would apply for child care jobs. Thus, "it cannot be said that [the Central Register laws] present[ ] only a speculative or hypothetical obstacle to [Valmonte's application for child care jobs]." *Clements*, 457 U.S. at 962, 102 S.Ct. at 2843. Therefore, that portion of Valmonte's second, fourth and sixth causes of action that complains that the state will inform prospective child-care employers of the fact that Valmonte is the subject of an indicated report, is ripe for review.

However, that portion of Valmonte's second, fourth and sixth causes of action that complains that the state will inform people other than prospective child-care employers of the fact that the Valmonte is the subject of an indicated report, is not ripe for review. Valmonte has not specifically identified in her complaint any parties other than prospective child-care employers who will learn of Valmonte's indicated report in the Central Register. "It is not inconceivable that [Valmonte] will one day confront th[e] eventuality [that parties other than child care employers will learn of her indicated report], but assessing th[at] possibility now would 'tak[e] us into the area of speculation and conjecture.'" *Blum v. Yaretsky,* 457 U.S. 991, 1001, 102 S.Ct. 2777, 2784, 73 L.Ed.2d 534 (1982) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 497, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974)). For this reason, that portion of Valmonte's second, fourth and sixth causes of action which complains that the state will inform people other than prospective child-care employers of the fact that Valmonte is the subject of an indicated report, is not ripe for review and is dismissed.

### 2. Valmonte's Liberty Interest in Her Reputation and Family

In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) the Supreme Court held that "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' nor 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161; *accord Siegert v. Gilley,* ─── U.S. ───, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991). The Second Circuit has "interpreted *Paul* to mean that some 'stigma plus' is required to establish a constitutional deprivation." *Easton v. Sundram,* 947 F.2d 1011, 1016 (2d Cir.1991).

In the instant case, Valmonte has sufficiently alleged the "stigma" portion of the "stigma-plus" requirement. By publicizing the existence of Valmonte's indicated report to prospective child-care employers, defendants will "expose[ ] [Valmonte] to public opprobrium and may [ ] damage[ ] [her] standing in the community." *Bohn v. County of Dakota,* 772 F.2d 1433, 1436 n. 4 (8th Cir.1985), *cert. denied,* 475 U.S. 1014, 106 S.Ct. 1192, 89 L.Ed.2d 307 (1986); *see Sims v. State Dept. of Public Welfare of the State of Texas,* 438 F.Supp. 1179, 1192 (S.D.Tex.1977) (three-judge court), *rev'd on other grounds sub nom. Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Petition of Bagley,* 128 N.H. 275, 513 A.2d 331, 338 (1986).

Valmonte has also established the "plus" portion of the "stigma plus" test. Courts have recognized that parents have a liberty and privacy interest in raising their children without undue state interference, *see, e.g., Rivera v. Marcus*, 696 F.2d 1016, 1022 (2d Cir.1982); *Bohn*, 772 F.2d at 1435–36; *Sims*, 438 F.Supp. at 1190–91, and it is this very liberty and privacy interest with which a public label of child abuser interferes. When defendants label an individual a child abuser and publicize that label, the label will "dr[i]ve a wedge into [the individual's] family and threaten[ ] its very foundation. The stigma [Valmonte will] suffer[ ] as a reported child abuser [will] undoubtedly [ ] erode[ ] [her] family's solidarity internally and impair[ ] [her] family's ability to function in the community." *Bohn*, 772 F.2d at 1426 n. 4; *see Sims*, 438 F.Supp. at 1192 ("The injury to these plaintiffs [who are publicly labelled as child abusers] is far greater than the public damage to the plaintiff's reputation in *Paul*.... The Court [in *Paul*] carefully distinguished 'matters relating to marriage, procreation, contraception, family relationship, and child rearing' as being 'far afield' from that plaintiff's claim."). Thus, reading plaintiff's complaint broadly, Valmonte has satisfied the "plus" requirement of the "stigma plus" test and has therefore demonstrated that being publicly labelled a child abuser will deprive her of a liberty interest.[6]

### 3. Procedural Due Process

"Having determined that [Valmonte] has a protected interest at stake, we next [examine whether] the procedural protections that are due [to Valmonte] under [SSL §§ 422, 424-a]" satisfy the constitution's due process requirements. *Bohn*, 772 F.2d at 1436.

In the instant case, as noted above, state DSS will inform child care employers of the existence of Valmonte's indicated report when the report has been confirmed by no more than "some credible evidence." Only after Valmonte has been denied a job and the employer points to the indicated report as the reason for the denial, can Valmonte require the state to prove by a "fair preponderance of the evidence" that she committed child abuse. SSL § 424–a(2)(d). Moreover, it is only after the state fails to prove by a fair preponderance of the evidence that Valmonte committed child abuse, that the Central Register will stop informing inquiring child care employers that Valmonte is the subject of an indicated report. SSL § 424–a(2)(e). Thus, it is clear that at least one of Valmonte's prospective child-care employers will learn that Valmonte is the subject of an indicated report, when Valmonte's acts of child abuse have only been proven by "some credible evidence."

 The Supreme Court has stated that courts must balance three distinct factors when deciding whether specific procedural protections satisfy due process. The three factors are: "the private interests affected by the proceeding; the risk of error created by the state's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky v. Kramer*, 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599 (1982); *accord Mathews v. Eldrige*, 424 U.S. 319, 345, 96 S.Ct. 893, 908, 47 L.Ed.2d 18 (1976). The Court has also considered these factors "to determine whether a particular standard of proof in a particular proceeding satisfies due process." *Santosky*, 455 U.S. at 754, 102 S.Ct. at 1395.[7]

As noted above, Valmonte's private interest in this case is her interest in her reputa-

---

6. In *Whelehan v. County of Monroe*, 558 F.Supp. 1093 (W.D.N.Y.1983), the district Court held that because the confidentiality of reports of child abuse to agencies authorized by law to receive such reports was protected under SSL § 422(4) and § 422(10) (now § 422(12)), "defamatory publication of suspicion of child neglect or abuse to [such] agencies [ ] is not sufficient publication for the purpose of stating [ ] a [section 1983] claim." *Id.* at 1109. By contrast, the publication in the instant case is to prospec-

tive child care employers upon whom there are no restrictions as to whom they may communicate the existence of plaintiff's indicated report. Thus, the holding in *Whelehan* is not applicable to the circumstances of this case.

7. In *Santosky*, the Supreme Court stated:
 The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of fact finding, is to 'instruct the fact finder concerning the degree

tion and the healthy functioning of her family.

Moreover, as far as the risk of error is concerned, although the SSL provides for a number of reviews of an individual's indicated report, the risk that the Central Register will erroneously publicize that the individual is a child abuser is relatively high because, as shown above, the Central Register can publicize this information at least once at a time when the report is only based on "some credible evidence."

Finally, the defendants have provided the Court with no countervailing government interest to support their publication of Valmonte's indicated status to prospective child-care employers when Valmonte's indicated report is only based on some credible evidence that Valmonte committed child abuse. Defendants cannot argue that the state does so to protect the welfare of children. As even defendants must admit, the SSL provides that once state DSS has failed to prove by a fair preponderance of the evidence that an individual committed child abuse, state DSS will no longer tell inquiring child care employers to whom the individual has applied that the individual is the subject of an indicated report. SSL § 424–a(2)(d). Moreover, upon state DSS's

failure to prove child abuse by a fair preponderance of the evidence, the SSL requires state DSS to write to the employer that denied the subject a job because of the subject's indicated report, and to tell the employer that it should reconsider its decision. SSL § 424–a(2)(e). If the state truly believed that it had an interest in informing child care employers that an individual is the subject of an indicated report which was proved solely by "some credible evidence," the SSL would not have forbidden the publication of this information to prospective child-care employers if the state fails to prove by a fair preponderance of the evidence the individual's commission of child abuse.[8]

Therefore, we decline to dismiss that portion of Valmonte's complaint that maintains that the state's publication to prospective child-care employers that Valmonte is the subject of an indicated report violates Valmonte's rights to liberty, reputation, privacy, and procedural due process.[9]

### B. Maintenance of a Central Register that Contains Valmonte's Name

#### 1. Ripeness

Because an indicated report about Valmonte is now stored in the Central Register, Valmonte's claim is ripe for review.

---

of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. . . .' [I]n any given proceeding, the minimum standard of proof tolerated by the due process requirements reflects not only the weight of the private and public interests affected, but also a societal judgment about how the risk of error should be distributed between the litigants. *Santosky,* 455 U.S. at 754–55, 102 S.Ct. at 1395.

**8.** As noted above, Valmonte will only be able to require the state to prove the abuse by a fair preponderance of the evidence after she is denied at least one child care job as a result of her indicated report. Prior to this denial, plaintiff has no way to limit the state's publication of the existence of her indicated report to prospective child-care employers.

**9.** Valmonte complains in her fourth cause of action that the Central Register does not inform child care employers and others about the details contained in indicated reports. Given the state's interest in protecting the privacy of subjects of indicated reports, the access subjects of indicated reports have to the reports, SSL § 422(4)(A)(d), and the ability of the subjects to

"explain the circumstances surrounding the reports to prospective [child-care] employers," Defendant Perales' Reply Brief at 20, we hold that plaintiff's fourth cause of action does not state a claim upon which relief can be granted.

Valmonte also complains in her fourth cause of action that the Central Register does not inform child-care employers and others that the "definition of child abuse used by the New York State Department of Social Service oversteps the bounds of New York State child abuse and neglect statutes." Compl. ¶ 45. Reading plaintiff's complaint broadly, we find that she is asserting that the Central Register refuses to tell prospective child-care employers what child-abuse standards the Central Register uses when determining whether to indicate an individual's report. This refusal implicates plaintiff's liberty interest in her family and reputation, discussed above, because by not describing the standards that it uses, the state leaves open to speculation what it means for plaintiff to be listed in the Central Register. Thus, assuming that plaintiff's assertion is true, the state must provide reasons for not informing inquiring child-care employers the child-abuse standards that the Central Register uses.

## 2. Valmonte's Liberty Interest in Her Reputation and Family

■■■ Valmonte's liberty interest in her reputation is not implicated by the mere maintenance of an indicated report about Valmonte in the Central Register. As the ninth circuit stated in *Bollow v. Federal Reserve Bank*, 650 F.2d 1093 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), "[u]npublicized accusations do not infringe constitutional liberty interest[s] because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Id.* at 1101. In the instant case, the state's maintenance of an indicated report in the Central Register, without publication, does not implicate Valmonte's liberty interest in her reputation.

Moreover, it is not apparent, and Valmonte does not describe how the state's maintenance of Valmonte's indicated report in the Central Register without publication will in any way interfere with Valmonte's right to raise her family without undue state interference.

Because we find that the state's maintenance of an indicated report does not implicate any of defendant's liberty interests, Valmonte's claim that the state's maintenance of her indicated report violates her constitutional rights must fail. *See Sims v. State Department of Public Welfare of the State of Texas*, 438 F.Supp. 1179, 1192 (S.D.Tex.1977) (three-judge court) (implicitly holding that if the state simply maintains investigative files on child abusers, this alone does not implicate the abusers' due process or privacy rights), *rev'd on other grounds sub nom. Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

## III. Valmonte's Third Cause of Action

In her third cause of action Valmonte maintains that the Central Register Procedures do not permit subjects of indicated reports to challenge the legal sufficiency of the charges against them and to present evidence in their own defense. Valmonte therefore maintains that the Central Register procedures violate subjects' rights to procedural due process of law in violation of the fifth and fourteenth amendments to the United States constitution.

Assuming that Valmonte is challenging the hearing and review procedures enumerated in SSL §§ 422 and 424–a, Valmonte's claim is without merit. Valmonte herself admits that "New York law permits parents to contest the truth of the charges that they abused or neglected their children." Compl. ¶ 40.

With respect to her assertion that the statutes forbid subjects from challenging the legal sufficiency of the charges against them, there is nothing in the statutes to support the existence of this prohibition. If Valmonte is alleging that subjects of indicated reports cannot attack the constitutionality of child abuse statutes or regulations, her claim is frivolous, as is demonstrated by her ability to bring the instant litigation.

Finally, Valmonte's inability to present evidence of rehabilitation at factfinding hearings does not violate due process, as rehabilitation has nothing to do with a determination of whether Valmonte committed the acts charged.

## IV. Valmonte's Fifth, Seventh, and Eighth Causes of Action

In Valmonte's fifth, seventh, and eighth causes of action, she asserts that defendants' actions vis-a-vis the Central Register violate state law.

■■■ It is well settled that the eleventh amendment bars suits in federal court against state officials for violating state law. *See Penhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984). In the instant case, defendant Perales, the Commissioner of the State Department of Social Services, is a state official, and thus Valmonte's state law allegations against Perales must be dismissed.

■■■ As far as defendant Cook is concerned, she bears the title of Commissioner of the Orange County Department of Social Services. Thus, at first blush, it appears that defendant Cook is a county official and therefore may not be entitled to eleventh

amendment immunity. *See Penhurst*, 465 U.S. at 123 n. 34, 104 S.Ct. at 920 n. 34. However,

> [i]n New York State, the social services program is a state program, administered through the 58 local social services districts under the general supervision of the State Department of Social Services and the State Commissioner of Social Services. (N.Y. Const. art. XVII, § 1; Social Services Law, §§ 17, 20, 34.) The county commissioners are denominated by statute "agents" of the State department (Social Services Law, § 65, subd. 3). In the administration of public assistance funds, whether they come from Federal, State or local sources, the authority and responsibility is that of the county commissioners of social services, not the counties; the local commissioners act on behalf of and as agents for the State. Each is a part of and the local arm of the single State administrative agency.

*Beaudoin v. Toia*, 45 N.Y.2d 343, 347, 408 N.Y.S.2d 417, 380 N.E.2d 246 (1978). Thus, it appears that the County Commissioners of Social Services are really state officials for eleventh amendment purposes, and therefore, defendant Cook is entitled to eleventh amendment immunity with respect to the state claims.

Moreover, even assuming that defendant Cook is not a "state official" for eleventh amendment purposes, she still is immune to Valmonte's state claims against her. The eleventh amendment immunizes county officials from liability for state law claims when "the county and the state jointly administer a program and [] complete relief [cannot] be afforded by a judgment against the county only." *Wylie v. Kitchin*, 589 F.Supp. 505, 511 n. 8 (N.D.N.Y.1984); *see Penhurst*, 465 U.S. at 123–24, 104 S.Ct. at 920–21. In the instant case, the Central register program is jointly run by the State and Local Departments of Social Services; the Local departments of Social Services do the initial investigations of child abuse reports and state DSS reviews the reports if the conclusions of the reports are challenged. In addition, as noted above, the local Commissioners of Social Services are agents of state DSS and are State DSS's local arms. "In short, the present judgment could not be sustained on the basis of the state-law obligations of [] [defendant Cook]. Indeed, any relief granted against [defendant Cook] on the basis of state [law] would be partial and incomplete at best. Such an ineffective enforcement of state law would not appear to serve the purposes of efficiency, convenience, and fairness that must inform the exercise of pendent jurisdiction." *Penhurst*, 465 U.S. at 124, 104 S.Ct. at 921. Therefore, even if defendant Cook is not a "state official" for eleventh amendment purposes, the state law claims against defendant Cook must be dismissed. *See Wylie v. Kitchin*, 589 F.Supp. 505, 510–11 & n. 8 (N.D.N.Y.1984) (dismissing state law claims against County Commissioner of Department of Social Services); *see also Sheepshead Nursing Home v. Heckler*, 595 F.Supp. 992, 996 (S.D.N.Y. 1984) (dismissing state law claims against acting commissioner of city agency because "[i]t [was] clear that the relief sought against the ... city defendants [] would operate against the State of New York itself.").

### Conclusion

Defendants' motion to dismiss Valmonte's first cause of action is denied. Defendants' motion to dismiss that portion of Valmonte's second, fourth, and sixth causes of action that complains that the state will inform prospective child-care employers that Valmonte is the subject of an indicated report, is denied. Defendants' motion to dismiss that portion of Valmonte's second, fourth, and sixth causes of action that complains that the state will inform people other than prospective child care employers that Valmonte is the subject of an indicated report is granted. Defendants' motion to dismiss that portion of Valmonte's second, fourth, and sixth causes of action that complains of the state's mere maintenance of defendants' indicated report in the Central Register is granted. Defendants' motion to dismiss Valmonte's third, fifth, seventh, and eighth causes of action is granted.

The parties are directed to attend a status conference in courtroom 312 at 12:00 Noon on May 4, 1992.

SO ORDERED.