**Anna VALMONTE, individually and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Mary Jo BANE, as Commissioner of the New York State Department of Social Services, and J. Daniel Bloomer, as Commissioner of the Orange County Department of Social Services, Defendants.**

**No. 91 Civ. 2156 (AGS).**

United States District Court, S.D. New York.

Aug. 3, 1995.

Lansner & Kubitschek, New York City, for plaintiffs.

Rob Becker, Assistant Attorney General of State of New York, New York City, for Cesar Perales.

Stephen Toole, County Attorneys of Orange County, Goshen, New York, for Shirley Harvey Cook.

## AMENDED OPINION and ORDER [1]

SCHWARTZ, District Judge:

Plaintiff Anna Valmonte, on behalf of herself and the class she seeks to represent, moves for an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.[2] For the reasons set forth below, plaintiff's motion is granted.

The facts and prior proceedings of this lawsuit have been comprehensively set forth in previous opinions of this Court and the Second Circuit. *See Valmonte v. Perales,* 788 F.Supp. 745 (S.D.N.Y.1992); *Valmonte v. Bane,* 812 F.Supp. 423 (S.D.N.Y.1993); *Valmonte v. Bane,* 18 F.3d 992 (2d Cir.1994). Familiarity with these decisions is presumed; however, a summary of the facts and proceedings which bear upon the instant motion is presented below.

In 1991, plaintiff Anna Valmonte commenced this action against the Commissioner of the New York State Department of Social Services (DSS) and the Commissioner of the Orange County Department of Social Services pursuant to 42 U.S.C. § 1983 alleging that the inclusion by defendants of plaintiff's name on the New York State Central Register of Child Abuse and Maltreatment ("the Central Register") violated her constitutional rights.[3] More precisely, plaintiff, who had been employed some years before as a "paraprofessional" in a public school system, claimed that the state's provisions for: the designation of individuals as abusive or neglectful in the Central Register; the review of such designations; and the dissemination of information contained in the Central Register to potential employers in the child care field violated, *inter alia,* her rights of privacy and substantive and procedural due process under the First, Fourth, Fifth, Ninth and Fourteenth Amendments.

Defendants moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Upon such motion, this Court dismissed certain of plaintiff's federal constitutional claims as well as each of her state law claims by Order dated March 31, 1992 (the "March 31, 1992 Order"). *Valmonte v. Perales,* 788 F.Supp. 745 (S.D.N.Y.

---

1. This Amended Opinion and Order corrects certain typographical errors contained in the Opinion and Order of this Court dated July 24, 1995.

2. Also pending before this Court is plaintiff's motion for class certification which had been dismissed as moot by this Court's decision in *Valmonte v. Bane,* 812 F.Supp. 423, 425 (S.D.N.Y.1993) but was revived as a consequence of the Second Circuit's decision in *Valmonte v. Bane,* 18 F.3d 992 (2d Cir.1994). It is not necessary to resolve the motion for class certification—and we do not here do so—in order to resolve the instant motion.

3. At present, Michael J. Dowling is the Commissioner of the New York State Department of Social Service. However, there has been no formal substitution of Mr. Dowling for Mary Jo Bane, his predecessor as Commissioner, as a defendant in this action. Moreover, plaintiff originally brought this action against Cesar Perales and Shirley Harvey Cook, who were at that time the Commissioners of the New York State and Orange County Departments of Social Services, respectively. The claims remaining in this action relate only to the conduct of each defendant in an official capacity.

1992) (J. Conboy). Thereafter, by Order dated February 5, 1993 (the "February 5, 1993 Order"), this Court *sua sponte* reconsidered defendants' motion to dismiss and dismissed the remaining counts of plaintiff's complaint. *Valmonte v. Bane,* 812 F.Supp. 423 (S.D.N.Y. 1993) (J. Conboy).

On appeal, the Second Circuit addressed whether the following state actions violated plaintiff's constitutional rights: (1) the inclusion of plaintiff's name on the Central Register; (2) the communication of information on the Central Register to potential employers in the child care field; and (3) the statutory requirement that any employer who would hire plaintiff despite her inclusion on the Central Register justify that decision in writing. *Valmonte v. Bane,* 18 F.3d 992, 999 (2d Cir.1994). In applying what has become known as the "stigma plus" standard for constitutional deprivation, *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989), the Second Circuit held that plaintiff had in fact met the "stigma plus" standard and thus demonstrated a violation of her constitutional rights. Specifically, the Circuit Court concluded that communication of plaintiff's status on the Central Register would stigmatize her, and found further—addressing an issue which the appellate panel acknowledged to be one of first impression—that plaintiff had a cognizable liberty interest in pursuing employment in her chosen field, such that the added burdens imposed upon would-be employers represented an unconstitutional and "specific deprivation of [plaintiff's] opportunity to seek employment caused by a statutory impediment established by the state." *Valmonte v. Bane,* 18 F.3d at 999, 1001.

The Second Circuit also considered whether the DSS policy of including individuals in the Central Register on the basis of "some credible evidence" supporting an allegation of abuse or neglect constituted an adequate safeguard of plaintiff's procedural due process rights. *Valmonte v. Bane,* 18 F.3d at 1002. The court held that while the plaintiff's liberty interest in seeking employment in the child care field was "fairly evenly balanced" by the state's interest in "ensuring that those with abusive backgrounds not be inadvertently given access to children," the "some credible evidence" standard employed by the DSS in designating the plaintiff as abusive entailed an "enormous risk of error." *Valmonte v. Bane,* 18 F.3d at 1003, 1004, 1005. The court also concluded that existing provisions for post-deprivation hearings, held after an individual had already been denied employment on the basis of inclusion in the register and conducted on a "fair preponderance of the evidence" standard, failed to cure the constitutional deprivation wrought upon plaintiff as a result of the "unacceptably high risk of error" in the initial administrative hearing. Accordingly, the Circuit Court reversed the February 5, 1993 Order and remanded the matter for consistent proceedings in this court. *Valmonte v. Bane,* 18 F.3d at 1003, 1004.

Plaintiff now moves for attorney's fees pursuant to 42 U.S.C. § 1988 which states in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In exercising our discretion on this issue, we must address two issues. First, we must evaluate whether the results achieved thus far by plaintiff render her a "prevailing party" within the meaning of 42 U.S.C. § 1988, such that a basis exists to support an award of attorney's fees *pendente lite.* Second, if we so find, we must settle upon an amount that would constitute a "reasonable attorney's fee" in the instant case.

For the reasons set forth below, this Court concludes that plaintiff has achieved results sufficient to support a finding that she is a prevailing party within the meaning of 42 U.S.C. § 1988. Accordingly, we grant plaintiff's motion for an award of attorney's fees and costs *pendente lite,* subject to certain limitations which are described below.

**Prevailing Party Analysis**

Defendants do not dispute the fact that the Second Circuit's ruling revived several of plaintiff's previously dismissed constitutional

claims. Defendants contend, however, that plaintiff's motion for attorney's fees is premature because: (1) the Second Circuit's remand for further proceedings does not support a declaration that plaintiff is a prevailing party; (2) plaintiff's favorable Second Circuit ruling may prove purely technical if she is found to be abusive by a "fair preponderance of the evidence" at an administrative rehearing; and (3) with respect to persons other than plaintiff, the sole benefit of the Second Circuit's decision is that a fair preponderance hearing occurs earlier than it would otherwise. These contentions are discussed *seriatim*.

First, in circumstances such as those before us, we find that a partial reversal and remand suffices to render plaintiff a "prevailing party" under the relevant case law. The facts of the present case are generally analogous to those of *Texas State Teachers Ass'n v. Garland Independent School Dist.*, in which petitioners, a group of teachers' associations, challenged the respondent school district's policies regarding employee communications on First and Fourteenth Amendment grounds. 489 U.S. 782, 784, 109 S.Ct. 1486, 1489, 103 L.Ed.2d 866 (1989). The District Court for the Northern District of Texas "rejected petitioners' claims in almost all respects." Thereafter, the Fifth Circuit reversed the district court's decision, finding *inter alia* that several aspects of respondent's policies were in fact unconstitutional, and remanded the case for further proceedings before the District Court. *Garland*, 489 U.S. at 785–86, 109 S.Ct. at 1489–90 (summarizing procedural history).

Following a summary affirmance by the Supreme Court, the petitioners filed an application for attorney's fees under 42 U.S.C. § 1988. In reversing the denial of the fee application by both the District Court and the Fifth Circuit, the Supreme Court reiterated its holding in *Hanrahan v. Hampton* that *pendente lite* awards are authorized in cases where a party "has established his entitlement to some relief on the merits on his claims, either in the trial court or on appeal." *Hanrahan*, 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980); *Gar-*

*land,* 489 U.S. at 789, 109 S.Ct. at 1492. The Court explained:

> if petitioners' victory ... had been only an interim one, with other issues remanded for further proceedings in the District Court, petitioners would have been entitled to some fee award for their successful claims under § 1988 ... A prevailing party must be one who has succeeded on any significant claim affording it some of the relief sought, either *pendente lite* or at the conclusion of the litigation.

*Garland,* 489 U.S. at 790–91, 109 S.Ct. at 1493.

Here, the plaintiff has succeeded on not one but two "significant claims," as the Supreme Court described such claims in *Hanrahan* and *Garland.* More precisely, the Second Circuit has ruled that plaintiff has a liberty interest in the pursuit of her chosen profession and that her procedural due process rights were not adequately safeguarded when the DSS added her name to the Central Register on the basis of "some credible evidence." Inasmuch as this Court initially dismissed those claims, and has now been directed to act in a manner consistent with the Second Circuit's ruling, the plaintiff can surely "point to a resolution of the dispute which changes the legal relationship between [herself] and the defendant." *Garland,* 489 U.S. at 792, 109 S.Ct. at 1493.

Defendants further challenge the treatment of plaintiff as a prevailing party by arguing that on an administrative rehearing, plaintiff may be deemed abusive even by a preponderance of the evidence, in which case her name will not be expunged from the Central Register and the litigation will have no "real effect" with respect to her. This argument is unpersuasive for two reasons. First, what plaintiff has sought and won is not the right to a particular outcome upon the rehearing of her case (i.e. expungement of her name from the Central Register) but the right to the rehearing itself. Even if plaintiff is not exonerated on a preponderance of the evidence standard at rehearing, that administrative procedure is discrete and separate from the instant litigation. It is *this* matter—i.e. plaintiff's effort to obtain greater process than that previously accord-

ed her by the state, and not the outcome of the administrative proceeding, which provides the focus of the attorney's fees inquiry. In this matter, plaintiff has already substantively prevailed.

■ Second, the Circuit Court has held that an award of attorney's fees may be made to a plaintiff even where the particular remedy achieved has been rendered moot. *Ortiz v. Regan,* 980 F.2d 138 (2d Cir.1992). In *Ortiz,* plaintiff's pension fund benefits had been suspended without a hearing as a result of a dispute as to plaintiff's date of birth. Although both the trial court and the Court of Appeals found that the lack of a pre-deprivation hearing had violated plaintiff's due process rights, Ortiz herself could no longer benefit from a pre-deprivation hearing, because she had already suffered the loss of her benefits. Nonetheless, the Second Circuit did not condition the award of fees upon the utility (or lack thereof) of a pre-deprivation hearing to the particular plaintiff. Rather, the appellate panel remanded the matter to the District Court for an award of fees, stating that "[i]f attorney's fees [were] not provided in situations such as this one, there would be no incentive for private citizens to challenge pre-deprivation due process violations where a post-deprivation remedy exists." *Ortiz,* 980 F.2d at 140.

■ Plaintiff Valmonte has not yet been denied a job opportunity as a result of defendants' policies, and the remedy of a pre-deprivation hearing has therefore not been rendered moot by circumstance. To the extent that the law of this Circuit allows a fee award to a plaintiff who has achieved a remedy that is moot in her particular case, an award of fees must also be permitted where a plaintiff has achieved a remedy which has not lost its usefulness to her.

■ Finally, defendants contend that the sole effect of the Second Circuit's ruling in *Valmonte v. Bane* is to move the fair preponderance hearing which is already provided for in state law so that it occurs before rather than after an individual loses a job

opportunity. This argument has already been addressed and rejected by the Second Circuit. In ruling for plaintiff Valmonte, the Court of Appeals has made it clear that an individual need not wait until after a deprivation has occurred to vindicate her liberty interests:

> The Central Register does not simply defame Valmonte, it places a tangible burden on her employment prospects.... This is not just the intangible deleterious effect that flows from a bad reputation. Rather, it is a specific deprivation of her opportunity to seek employment caused by a statutory impediment established by the state.

*Valmonte v. Bane,* 18 F.3d at 1001. In addition, the Court of Appeals has held that a plaintiff may be deemed to have "prevailed" for the purposes of a *pendente lite* fee application analysis where that plaintiff has, by means of litigation conducted to the date of the fee application, "vindicated her pre-deprivation due process rights even though a post-deprivation remedy [is] available." *Ortiz,* 980 F.2d at 140. Defendant's continued emphasis on the availability of post-deprivation hearings does not diminish plaintiff's status as a "prevailing party" within the meaning of § 1988.

Moreover, we note that, although the present litigation has not yet been concluded, the Second Circuit's ruling in *Valmonte v. Bane* has already had a demonstrable legal impact. To date, three appellate courts in the State of New York have applied the Second Circuit's ruling that the New York State Department of Social Services may not include individuals in the Central Register on the basis of "some credible evidence." *See Smith v. Perales,* 208 A.D.2d 752, 617 N.Y.S.2d 806 (2d Dept. 1994); *Matter of Lee "TT" v. Dowling,* 211 A.D.2d 46, 624 N.Y.S.2d 648 (3d Dept.1995); *Peralta v. Bane,* —— A.D.2d ——, 625 N.Y.S.2d 542 (1st Dept.1995). Stated otherwise, three individuals other than plaintiff in the present case have benefited from plaintiff's efforts, insofar as their names have been expunged from the Central Register.[4]

---

**4.** It should be noted that both *Matter of Lee "TT" v. Dowling* and *Peralta v. Bane* were remanded to the New York State DSS for new hearings based

on the "fair preponderance of the evidence standard," whereas the original DSS determination in *Smith v. Perales* was annulled outright. *Mat-*

To this extent, plaintiff's attorneys have effectuated the intent of Congress in enacting 42 U.S.C. § 1988 by serving not only their client but the public interest. *City of Riverside v. Rivera*, 477 U.S. 561, 574–77, 106 S.Ct. 2686, 2694–95, 91 L.Ed.2d 466 (1986) (citing Congressional Record); *see also Cowan v. Prudential Ins. Co. of America*, 935 F.2d 522, 527 (2d Cir.1991). To overlook the benefit secured to the public by the present litigation would squarely contradict the purpose of the fee-shifting statute. *Blanchard v. Bergeron*, 489 U.S. 87, 95, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989) (discussing Congressional intent).

For the foregoing reasons, we conclude that plaintiff is a "prevailing party" within the meaning of 42 U.S.C. § 1988 and, therefore, that an award of attorney's fees *pendente lite* is justified. The remaining issue is the establishment of a reasonable fee.

### Fee Analysis

Plaintiffs seek attorneys' fees and costs totaling $148,709.10. This represents $53,704.75 in fees and $1,442.26 of costs for work done in the Second Circuit, and $88,941.50 in fees and $4,620.59 of costs for work done through April 30, 1994 in the District Court. Plaintiffs have also requested a multiplier of .25 in recognition of the extended duration of this litigation and the concomitant delay in payment.

Defendant Bane objects to plaintiff's fee application on the following grounds: (1) the fee application fails to reflect that a certain amount of the time for which compensation is sought was devoted to prosecution of losing claims; and (2) plaintiff's counsel failed to exercise billing judgment, manifested by lack of specificity in documentation. Defendant Bane also argues that plaintiffs' request for a multiplier on the basis of delay should be denied. Defendant Bloomer, focusing on the question remanded to this Court by the Second Circuit, argues that only the discrete acts of the State are in issue and that, accordingly, no apportionment of the fee award should be made against defendant Bloomer. These objections are considered separately as set forth below.

ter of Lee "TT", 624 N.Y.S.2d at 649; *Peralta,* 625

### Reduction for Losing Claims

 Defendant Bane argues that this Court should draw a distinction between those claims in plaintiff's complaint which failed and those which succeeded, and award fees only for services related to the latter. In *Hensley v. Eckerhart,* the Supreme Court established the framework for evaluating such a request, noting that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). Rather, the Court directed inquiry into whether a plaintiff had "fail[ed] to prevail on claims that were unrelated to the claims on which he succeeded," based upon the degree to which his claims "involve[d] a common core of facts or [were] based upon related legal theories." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940.

Defendant Bane concedes that plaintiff's claims derive from a common core of facts, but points out that plaintiff failed on all but one of the claims in her complaint and that the claim on which plaintiff succeeded was not the most important of her claims. The Supreme Court, however, has explicitly rejected both rote counting of prevailing and unsuccessful claims, and the so-called "central issue" test for establishing the relative importance of claims. *Hensley,* 461 U.S. at 435, n. 11, 103 S.Ct. at 1940, n. 11 (rejecting mathematical comparison); *Garland,* 489 U.S. at 790, 109 S.Ct. at 1492 (rejecting "central issue" test as "contrary" to *Hensley* ).

 By contrast, the "common core of facts" approach has endured. *Id.; see also Lunday v. City of Albany,* 42 F.3d 131, 135 (2d Cir.1994) (employing "common core of facts" approach). That is, where, as here, plaintiff's claims derive from a common core of facts, the Court has recognized that "[m]uch of counsel's time will be devoted generally to the litigation as a whole ... Such a lawsuit cannot be viewed as a series of discrete claims." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940. In light of the sub-

N.Y.S.2d at 542; *Smith,* 208 A.D.2d at 752.

stantial results that plaintiff has achieved, discussed *supra* at 597–600, and absent any evidence that plaintiff's unsuccessful claims were brought frivolously, this Court is not "required" to reduce the fee award "to reflect [plaintiff's] failure to succeed across the board." *Lunday,* 42 F.3d at 135.

### Lodestar Analysis

 "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. In the Second Circuit, the use of this "lodestar" approach in calculating a "reasonable" attorney's fee award predates the passage of § 1988 itself. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 470–71 (2d Cir.1974). If an attorney has failed to exercise billing judgment, that failure will logically be apparent from either the hourly rate demanded or the number of hours of service that counsel claims to have performed, and the Court may adjust the lodestar accordingly.

### Reasonable Hourly Rate

 The hourly rates assigned for attorneys' services must be consistent "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). The "community" or marketplace in this instance is the Southern District of New York, including Manhattan, where this Court is located and where this litigation has been conducted. *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987).

 Plaintiff's counsel has requested rates of $200 an hour for services rendered before January 1, 1992, and $250 an hour for services after that date. The two attorneys who have represented plaintiff throughout this matter have documented over twenty years of experience in the practice of public interest law. Over that time, each attorney has worked extensively in civil rights and family law, and their firm, which was founded in 1991, specializes in those areas. Apart from their considerable litigation experience, the two have also published and lectured on civil rights and family law matters. Given the vast experience and expertise of plaintiff's counsel, which defendants have not challenged, this Court is persuaded that $200 and $250 per hour for the specified time periods are reasonable rates. These rates are also deemed consistent with the relevant prevailing market rates in this district. *See, e.g., Loper v. New York City Police Dept.,* 853 F.Supp. 716, 720 (S.D.N.Y.1994) (awarding $250 an hour, which was "commensurate with fee awards at the partner level in this District," to an attorney with "intermediate experience"). *See also Monaghan v. SZS 33 Assocs., L.P.,* 154 F.R.D. 78, 85 (S.D.N.Y. 1994) (rates of $250 to $300 an hour were appropriate for experienced partners).

 Plaintiff's counsel have also requested compensation for their support staff at rates of $75 an hour for law students, $60 an hour for paralegals prior to January 1, 1992, and $70 an hour thereafter, and $20 an hour for clerks. Where the prevailing custom is to bill for paralegal and clerical services separately from services rendered by attorneys themselves, we are authorized to compensate those support services in accordance with market rates in calculating the lodestar. *See Missouri v. Jenkins,* 491 U.S. 274, 286–89, 109 S.Ct. 2463, 2470–72, 105 L.Ed.2d 229 (1989) (holding that services rendered by clerks and paralegals may be billed separately if that is the usual practice in the local community). Given that separate billing is indeed the practice in this District, and because the rates requested are comparable to those charged for paralegal and clerical services in this community, we find plaintiff's counsel's request for compensation for the work of their support staff to be reasonable. *See Loper v. New York City Police Dept.,* 853 F.Supp. 716, 720 (S.D.N.Y.1994) (awarding $70 to $85 an hour, "a reasonable paralegal billing rate," for clerical work).

### Hours Reasonably Expended

 When a prevailing party makes a fee application, the "burden is on counsel to keep and present records from which the

court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987) (disallowing award where records included only one word descriptions). In this instance, plaintiff's attorneys have submitted contemporaneous records, which defendant Bane has challenged for lack of specificity. At even a cursory glance, defendant Bane's observation is—on one level—correct; the time records submitted by counsel are replete with one word functional descriptions such as "Research" and "Telephone Call." Such entries do not meet the standards of this Circuit for fee awards, since they do not aid the Court in understanding what services were provided and whether those services were reasonable.

Noting that the district court is authorized to make an across-the-board percentage reduction in the lodestar rather than engage in a line-item analysis of the fee request, defendant Bane urges this Court to reduce the lodestar by 50%. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983) ("it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application"); *Lunday,* 42 F.3d at 134 ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.") Even so, it is necessary that this Court be explicit about the reasoning underlying any reduction to avoid the perception that the percentage selected is an arbitrary and unfair one. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 ("It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award.")

■ This Court has carefully reviewed the records submitted by plaintiff. Plaintiff's attorneys have requested $88,941.50 in fees and $4,620.59 in costs for work done through April 30, 1994 in the District Court, and $53,704.75 in fees and $1,442.26 in costs for work done in the Second Circuit, for a total of $148,709.10. Of that amount, $2,375.00

has been requested for various services pertaining to the motion for class action certification; since that motion is still pending, the Court elects not to make an award for those services at this time.

As to the remainder of the application, the Court finds that approximately 20% of the balance of the entries are incomplete or are marked "Research," "Telephone Call," "Meeting," "Consultation," or "Miscellaneous." Without more information, it is impossible to determine whether the services to which those entries refer were reasonably rendered. Plaintiff's lead counsel has volunteered to provide more information, but to delay the instant motion any further would be to risk turning it into "a second major litigation," which is disfavored. *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. Given that this fee application is being considered *pendente lite,* plaintiff's counsel will have an opportunity in the future to resubmit any discounted claims. At this stage, the Court elects to reduce the amount of the fee award by an additional 20% (having already subtracted the services relating to the motion for class certification) which yields a total award of $117,067.28. In our view, this award takes adequate account of the results achieved by plaintiff's counsel without rewarding unreasonable or undocumented expenditures of time.

## Multiplier

Plaintiff's counsel have requested a multiplier of 25% in consideration of delay of payment. They point out that this litigation, which is still pending, has lasted over four years, that they have received no compensation to date, that they have had to advance payment on behalf of plaintiff, who cannot afford to pay them, and that they have had to forego working on other matters which could have produced income for them during the past four years.

■ Whereas fee enhancements or multipliers for reasons such as contingency or novelty have fallen out of favor, a delay multiplier remains within our discretion. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 716, 734, 107 S.Ct. 3078, 3082, 3091, 97 L.Ed.2d 585

(1987) ("We do not suggest ... that adjustments for delay are inconsistent with the typical fee-shifting statute;" disallowing enhancement based on risk); *Missouri v. Jenkins,* 491 U.S. at 284, 109 S.Ct. at 2469 ("An adjustment for delay is, we hold, an appropriate factor in the determination of what constitutes a reasonable attorney's fee under § 1988."). We decline, however, to exercise this discretion on the instant motion. This motion is being adjudicated *pendente lite,* and the interim award embodied in this Opinion and Order simultaneously acknowledges the services which have already been rendered by plaintiffs' counsel and precludes the further delay that would occur if plaintiffs' counsel were required to wait until the ultimate conclusion of this litigation to make a fee application. "In economic terms, such an interim award does not differ from an enhancement for delay in payment." *Missouri v. Jenkins,* 491 U.S. at 283–84 n. 6, 109 S.Ct. at 2469 n. 6. Accordingly, a further enhancement for delay is not warranted.

## Apportionment of the Fee Award

██ Defendant Bloomer argues that because the question remanded to this Court by the Second Circuit is based upon the discrete acts of the State in promulgating a statewide policy and maintaining a single Central Register, the litigation no longer implicates any acts on the part of Orange County. In support of this argument, defendant Bloomer notes that plaintiff's pendent state law claims against Orange County were dismissed by this Court in its March 31, 1992 Order. He, therefore, asks that the Court reject that portion of the motion for attorney's fees which may be directed against the Orange County Commissioner of Social Services.

It is true that plaintiff's state law claims, which implicated acts on the part of Orange County, were dismissed by the March 31, Order. Given that the Second Circuit reviewed only those claims which were dismissed in the February 5, 1993 Order, plaintiff cannot argue that her state law claims were revived as a result of the Circuit Court's ruling. *See Valmonte v. Bane,* 18 F.3d 992. Nonetheless, it is also true that those of plaintiff's federal constitutional claims which were revived by the Second Circuit's ruling implicate acts of Orange County as well as those of New York State, that Orange County has actively participated in the litigation of those claims, and that Orange County has continued to be a party to the instant litigation.

Moreover, the record shows that when plaintiff appealed the February 5, 1993 Order, defendant Bloomer requested and received permission to submit a reply brief which was filed some time after defendant Bane's brief. Defendant Bloomer's reply brief included substantial argument with respect to plaintiff's federal claims. As a result, plaintiff was required to expend time specifically responding to issues raised in defendant Bloomer's brief. That time expenditure has been documented in plaintiff's fee application; those entries which pertain to services rendered by plaintiff's counsel in responding to defendant Bloomer's brief total $8650.30.

In light of plaintiff's status as a "prevailing party" with respect to her federal claims, discussed *supra* at 597–600, we are not persuaded that plaintiff should be denied compensation for the hours devoted by plaintiff's counsel to responding to defendant Bloomer's brief. However, this Court cannot overlook the fact that the documentation of those hours suffers from the same lack of specificity that appears throughout plaintiff's fee application. A significant number of entries bear vague or repetitive labels; others can be identified as pertaining to defendant Bloomer's brief only by their date.[5]

Accordingly, this Court elects to reduce the award for these claims by 20% to reflect the lack of specificity in documentation, resulting in an award of $6,920.24 as against defendant Bloomer in his capacity as Commissioner of the Orange County Department of Social Services. The remaining $110,-147.04 of the fee award is to be borne by

---

**5.** Plaintiff's reply to defendant Bane's appellate brief was submitted July 12, 1993; thus, entries in plaintiff's fee application such as "Preparation

of reply brief" which were made after that date can be identified as relating to defendant Bloomer's brief.

**604**

defendant Bane in her capacity as Commissioner of the New York State Department of Social Services.

**Conclusion**

Plaintiff's motion for attorney's fees is hereby granted in the amount of $117,067.28, in accordance with the findings set forth above.

SO ORDERED.