772 F.2d 1433
 Wayne Louis BOHN and Sharon Anne Bohn, Individually and as
Natural Guardians and Guardians Ad Litem, Bradley
L. Bohn, a Minor, and Wayne Arthur Bohn,
Appellants,
v.
COUNTY OF DAKOTA: Shirley L. Utzinger, Director of Social
Services, Dakota County Human Services Department; Beth
Welshons, Worker, Child Protection Assessment Unit; Anthony
A. Bibus, Supervisor, Child Protection Assessment Unit;
Kenneth E. Malvey, Assistant County Attorney; Robert F.
Carolan, County Attorney; Dakota County Human Services
Board; John S. Voss, Chairman, Joseph A. Harris, Gerald E.
Hollenkamp, Steven Loeding and Russell L. Streefland, Appellees.
 No. 84-5100.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1985.
Decided Sept. 11, 1985.
 
 Dale C. Nathan, Eagan, Minn., for appellants.
 Douglas J. Muirhead, Minneapolis, Minn., for appellees.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 Wayne and Sharon Bohn appeal from the district court's dismissal of their suit against Dakota County under 42 U.S.C. Sec. 1983 for failure to state a claim. For reversal, the Bohns argue, first, that the County denied them due process by failing to provide them with notice of a finding of child abuse, statement of the basis for that finding, and notice of their right to appeal;[1] and, second, that deficient administrative procedures for contesting or appealing a finding of child abuse violate the fourteenth amendment.[2] We affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 On May 31, 1982, Wayne Bohn forcibly interceded to break up a fight between his two sons, one of whom then ran to a neighbor's house as a result. The incident prompted an investigation by the Dakota County Department of Social Services, which concluded that there was "substantial evidence" of child abuse by the Bohns. Although the Bohns disputed this conclusion,[3] the Department assigned a child protection worker to the case, pursuant to statute, and the social worker met with the Bohns and their children repeatedly in an attempt to remedy the presumed problems stemming from the alleged child abuse.
 
 
 4
 The Bohns attempted to clear the record of these charges, but their efforts were generally ineffective. Initially, they complained to the County Department of Social Services and explained that they wished to contribute their side of the story to the decision-making process, but the Department refused and stated that the investigation was complete. Thereafter, through counsel, the Bohns sought to correct the record through a variety of means, including a juvenile court action, an appeal to the State Department of Public Welfare, appeals of the juvenile action to the Dakota County District Court and the Minnesota Supreme Court, and requests for action through the Dakota County Human Services Board, their county commissioner, and their state representative.
 
 
 5
 When these measures were unavailing, the Bohns filed this section 1983 action in federal court. After the complaint was amended and was before the district court on a motion to dismiss, appellants' counsel wrote to the Minnesota Office of Administrative Hearings to demonstrate that appellants had no right of direct appeal from the finding of child abuse. That office responded by citing the rules of the Commissioner of Administration which implement the state's administrative procedure act and govern appeals of contested cases. After finding that the Bohns were provided with a procedure to challenge the finding of child abuse, and finding that it satisfied constitutional standards of due process, the district court determined that the Bohns had not stated a claim on which relief could be granted; accordingly, the district court dismissed the complaint. The Bohns appeal, arguing the due process defects we have mentioned above.
 
 
 6
 II. DUE PROCESS AND THE FINDING OF CHILD ABUSE.
 
 
 7
 The procedural protections guaranteed in the fifth and fourteenth amendments to the Constitution are triggered by the existence of a protectible liberty or property interest. Thus, the process that is due depends upon the nature of the interest at stake. In considering such questions, therefore, we engage in a two-step analysis by which we search for a protectible interest and, when one is apparent, examine the established procedures to determine whether they satisfy constitutional standards.
 
 
 8
 The privacy and autonomy of familial relationships involved in a case like this are unarguably among the protectible interests which due process protects. We can conceive of no more important relationship, no more basic bond in American society, than the tie between parent and child. In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Supreme Court stated that the interest of a widower "in the children he has sired and raised, undecidedly warrants deference and, absent a powerful countervailing interest, protection." Id. at 651, 92 S.Ct. at 1212. The Court continued:
 
 
 9
 the interest of a parent in the companionship, care, custody and management of his or her children "come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." Kovacs v. Cooper, 336 US 77, 95, 93 L Ed 513, 527, 69 S Ct 448 , 10 ALR2d 608 (1949) (Frankfurter, J., concurring).
 
 
 10
 The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed "essential," Meyer v. Nebraska, 262 US 390, 399, 67 L Ed 1042, 1045, 43 S Ct 625 , 29 ALR 1446 (1923), "basic civil rights of man," Skinner v. Oklahoma, 316 US 535, 541, 86 L Ed 1655, 1660, 62 S Ct 1110 [1113] (1942), and "[r]ights far more precious ... than property rights," May v. Anderson, 345 US 528, 533, 97 L Ed 1221, 1226, 73 S Ct 840 (1953). "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 US 158, 166, 88 L Ed 645, 652, 64 S Ct 438 (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, Meyer v. Nebraska, supra [262 U.S.], at 399 [43 S.Ct. at 626], 67 L Ed at 1045, the Equal Protection Clause of the Fourteenth Amendment, Skinner v. Oklahoma, supra [316 U.S.], at 541 [62 S.Ct. at 1113], 86 L Ed at 1660, and the Ninth Amendment, Griswold v. Connecticut, 381 US 479, 496, 14 L Ed 2d 510, 522, 85 S Ct 1678 [1688] (1965) (Goldberg, J., concurring).
 
 
 11
 Id.
 
 
 12
 In another case considering the protections due a foster family, the Supreme Court first considered the case of natural families, and concluded that "the liberty interest in family privacy has its source, and its contours are ordinarily to be sought, not in state law, but in intrinsic human rights, as they have been understood in 'this Nation's history and tradition.' Moore v. East Cleveland, ante [431 U.S. 494] at 503 [97 S.Ct. 1932 at 1938], 52 L.Ed.2d 531 [ (1977) ]." Smith v. Organization of Foster Families, 431 U.S. 816, 845, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977).[4]
 
 
 13
 Having identified the protectible interests at stake, we next turn to the procedural protections that are due under Minn.Stat.Ann. Sec. 626.556. To assist the courts in evaluating the propriety of such procedures, the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), identified three factors:
 
 
 14
 First, the private interest that will be affected by the initial action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail.
 
 
 15
 Id. at 335, 96 S.Ct. at 903.
 
 
 16
 Our review of the competing interests harmonized in Minn.Stat.Ann. Sec. 626.556, the procedural protections embodied in the statute, and the method for administrative reconsideration of the finding leads us to conclude that the Bohns received adequate procedural protection.
 
 
 17
 The statute of which the Bohns complain, Minn.Stat.Ann. Sec. 626.556, (entitled "Reporting of Maltreatment of Minors"), includes a declared public policy "to protect children whose health or welfare may be jeopardized through physical abuse, neglect, or sexual abuse; to strengthen the family and make the home safe for children through improvement of parental and guardian capacity for responsible child care; and to provide a safe temporary or permanent home environment for physically or sexually abused children." Minn.Stat.Ann. Sec. 626.556, subd. 1. The statute requires that certain specified professionals must report instances of suspected child abuse to local authorities, and that any other person having such knowledge may voluntarily make such a report. Id. at subd. 3. Local welfare officials are then obligated to "immediately investigate and offer protective social services for purposes of preventing further abuses, safeguarding and enhancing the welfare of the abused or neglected minor, and preserving family life whenever possible," as well as to maintain "appropriate records." Id. at subd. 10.
 
 
 18
 The records are maintained in accordance with Minn.Stat.Ann. Chapter 13 on Government Data Practices. The records maintained are private except insofar as they are disclosed to investigating, petitioning or prosecuting authorities. The subject of these records has access to these records, except that the reporter's name is disclosed only upon court order. Id. at subd. 11. Records relating to unsubstantiated reports are destroyed unless the subject requests otherwise; substantiated records are destroyed seven months after the final entry in the case, and cases that are neither substantiated nor unsubstantiated may be maintained for up to one year. Id. at subd. 11.
 
 
 19
 Although all persons who make reports, whether voluntarily or mandatorily, are immune from liability if they have acted in good faith and exercised due care, id. at subd. 4, a tort remedy is created under the statute for any false reports made willfully or recklessly. Id. at subd. 5.
 
 
 20
 Although section 626.557 does not explicitly provide for a means of appeal, its two references to Chapter 13 of the Minnesota statutes regulating government data practices provide access to a detailed process of administrative review. In section 13.04 (entitled "Rights of Subjects of Data"), anyone who is the subject of governmentally maintained data may contest the accuracy or completeness of the data. The subject is required to notify the responsible authority[5] in writing, "describing the nature of the disagreement," within thirty days. Inaccurate or incomplete data shall be corrected or the responsible authority shall notify the subject that "he believes the data to be correct." Most important, the statute provides that "[t]he determinations of the responsible authority may be appealed pursuant to the provisions of the administrative procedure act relating to contested case." Minn.Stat.Ann. Sec. 13.04, subd. 4.
 
 
 21
 Although Chapter 13 does not give a cross-reference citation to Minnesota's Administrative Procedure Act (APA), it refers to the APA by name, and that statute is set forth immediately thereafter in Chapter 14. Under section 14.57, state agencies are required to initiate contested case proceedings when they are "required by law." This has been determined to require such a proceeding where a hearing is required by statute or by constitutional provision. See Commers v. Spartz, 294 N.W.2d 321, 322 (Minn.1980) (county required to invoke APA over alleged violation of Minnesota Criminal Rehabilitation Act); MPIRG v. Minnesota Environmental Quality Council, 306 Minn. 370, 237 N.W.2d 375, 381-82 (1975); G. Beck, Administrative Contested Case Practices in Minnesota, 37 Bench and Bar, 39 (1980). For contested cases, all parties are given an opportunity for a hearing after reasonable notice which states the time, place, and issues involved in the case. Minn.Stat.Ann. Sec. 14.58.
 
 
 22
 The state APA also provides for the creation of an office of administrative hearings, Minn.Stat.Ann. Sec. 14.48, and vests in the chief administrative law judge the authority to "adopt rules to govern the procedural conduct of all hearings." Minn.Stat.Ann. Sec. 14.51. Although at the time of this proceeding these agency rules were not codified in the same manner they are now, they were publicly available and disseminated in 2 MCAR Secs. 1.201-.220 and 9 MCAR Secs. 2.201-.299, Contested Case procedures, recodified as 1 Minnesota Rules, Secs. 1205.0100-.2000 and 1400.0100-.8500 (1983).
 
 
 23
 The rules governing administrative appeals provide the time limitation for appealing (a "reasonable time" or 180 days after the responsible authority has made its decision), the address of the Commissioner of Administration to whom such appeals should be directed, and the required contents of the appeal notice. 1 Minn.Rules, Sec. 1205.1600. The case is then referred to a hearing examiner who presides at a hearing pursuant to rules for contested case hearings, 1 Minn.Rules, Sec. 1400.5700-.8500. These rules provide for notice to all parties, section 1400.5600; right to counsel, section 1400.5800; discovery, section 1400.6700; evidentiary rules (which allows the admission of "all evidence which possesses probative value"), section 1400.7300; and preparation of a record, section 1400.7400; among other things. Finally, after an aggrieved party has exhausted his means of administrative review under state administrative rules, he is entitled to submit his case for judicial review of the contested case decision. Minn.Stat.Ann. Sec. 14.63-.70.
 
 
 24
 Our thorough review of these statutes and regulations persuades us that the procedures for fact-finding and review satisfy the three-pronged test in Mathews. The first factor, the private interest affected by the official action, suggests that the procedures are adequate. Although, as we have observed, Mr. and Mrs. Bohn's interest in their family's solidarity and reputation as they relate to the family's vitality is a protectible interest, it is counterbalanced by the children's interest in continued freedom from abuse or neglect. Statutes like this one must attempt to harmonize this polarity of competing interests, and we believe this statute mediates between the two by minimizing the state's interference in family life. Essentially, the state makes a finding (which is treated confidentially), offers supportive social services, and monitors the progress of the family. Under this statute taken alone, the finding is not published, the child is not ordinarily taken from the parents, and the parents are not ordinarily prosecuted. Thus, the statute is designed as a preventative measure to minimize the damage which vulnerable children might suffer from familial conflict. Because the statute effectively mediates between the private interests, we cannot say it is constitutionally defective on the first Mathews factor.
 
 
 25
 The second Mathews factor for evaluating the constitutional adequacy of these procedures is the risk of error and the potential value of additional procedural protections. Although Minn.Stat.Ann. Sec. 626.556 does not incorporate an adversary hearing with cross-examination and representation by counsel, we do not believe such procedures are constitutional prerequisites under the circumstances. As we have noted above, the County's investigation is intended to be thorough and complex, drawing on the resources of health-related professionals and a variety of county law enforcement and social service personnel.
 
 
 26
 Moreover, the ex post procedures for review are fully adequate to test the veracity of the County Department's finding in that these procedures substantially incorporate truth-testing measures long approved by our legal system. We note that ex post procedures have previously been approved by the courts in cases which bear comparison with the case at bar. Thus, the Second Circuit recently declared, "Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligation by providing the latter." Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984). In cases which require fast action to protect the interests of children, e.g., Duchesne v. Sugarman, 566 F.2d 817, 826 (2d Cir.1977), or where an ex ante intervention by the state was based on a generally reliable ex ante finding, see Barry v. Barchi, 443 U.S. 55, 64-65, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979), such procedures have been upheld. Moreover, reasoning by negative example, ex post procedures are generally disapproved where the state's only post-termination process lies in an independent tort action. Logan v. Zimmerman Brush Co. 455 U.S. 422, 436-37, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982). In this case, the statute's tort remedy is amply supplemented by the full procedural protections embodied in the state APA and supporting rules. In addition, we believe that the interjection of fuller procedural protections at an earlier state in the process would be unduly time-consuming and cumbersome, and might well reduce important protections which the state legislature designed for otherwise vulnerable children.
 
 
 27
 Third, we consider the government's interests, including the burdens imposed by additional procedural protections. The government has a strong interest in protecting powerless children who have not attained their age of majority but may be subject to abuse or neglect. To the extent that pre-investigation procedural protections might delay or frustrate the protection of these children, we believe the government's interest might be impaired. In addition, although the pecuniary cost of such additional protection might not be great, to the extent that it would be duplicative of ex post procedures we have discussed at length, whatever cost would be entailed would be wasteful.
 
 
 28
 Thus, based on our review of the relevant statutes and their underlying administrative rules, we conclude that the Bohns' interests were adequately protected by the available procedures. Our discussion has, in part, touched on the available means of administrative review which we have approved, yet we have not resolved the additional due process question raised by the Bohns: despite the adequacy of the review procedure, did state officials deny the Bohns due process by misrepresenting to their attorney that administrative review was unavailable?
 
 
 29
 III. DUE PROCESS AND OFFICIAL MISREPRESENTATION ABOUT THE AVAILABILITY OF PROCEDURAL REVIEW.
 
 
 30
 Initially, we set forth a chronology of the events which the Bohns allege constituted misrepresentations about the unavailability of their appeal rights. The familial conflict which gave rise to this litigation occurred on May 31, 1982, with a prompt investigation and a finding of child abuse a few days later. The Bohns argue that a supervisory social worker in the County Department advised them orally, on June 4, 1982, that the finding of child abuse was final and unappealable. Three days later, the Bohns' attorney made three phone calls to an attorney assigned to the County Department of Social Services, and none of the calls was returned. On June 11, the Bohns' attorney requested an opportunity to present evidence that would contradict the finding, but the County Department advised them that the investigation was complete. The County Department made no reference to proper procedure for appealing the determination.
 
 
 31
 The Bohns then commenced an action in Dakota County Juvenile Court on July 9, 1982, in an apparent attempt to demonstrate that the Bohn children were not abused or neglected. Although the juvenile court subsequently declined jurisdiction, at this hearing the assistant County attorney suggested that the Bohns appeal under the "Fair Hearing Act." Accordingly, the Bohns' attorney spoke with an official of the State Department of Public Welfare, who said that he did not believe that a finding of child abuse was appealable, but suggested that the Bohns send a letter to inquire further. As we discuss below, in this letter, the Bohns' attorney requested an appeal "pursuant to Minnesota Statutes 256.045[6] or any other statute." He asked "that services now being provided by the Dakota County Department of Human Services be terminated or, in the alternative, that the Department be directed to proceed in Dakota County Juvenile Court." The state appeals referee responded that the statute "contains no language which provides authority to conduct a hearing for the purpose of reviewing the appropriateness of services provided in response to the identification of child abuse. * * * [T]he issue you present is not appealable under MSA 265.045."
 
 
 32
 After the juvenile court action was dismissed in September, 1982, and unsuccessfully appealed to the Dakota County district court, the Bohns appealed the matter to the Minnesota Supreme Court in January, 1983. The Bohns concede in their brief before this Court that, on that appeal, six months after the incident at issue, "the attorney representing the Dakota County Department of Human Services referred to Minnesota statutes concerning the review of private data maintained by a department as providing the means of appealing a finding of child abuse. This was the first information provided by defendants concerning a means of appeal. There was no mention of any administrative procedures." (Appellant's Brief at 12). In light of this information, the Bohns dismissed their appeal to the State Supreme Court (after a prehearing conference in which one of the justices suggested a civil rights suit as possible remedy) and sought disclosure of the documents maintained by Dakota County authorities under the Minnesota Data Practices Act. The Bohns' attorney requested that several documents be changed to state that Mr. Bohn had not abused his children; the director of the County Department replied that the documents were accurate and would not be changed unless the requested change was more specific. The County Department made no reference to the availability of any further review procedures.
 
 
 33
 The Bohns concurrently pursued several political remedies, including requests for assistance from their elected County Commissioner, the Dakota County Human Services Board and their state representative. Because these efforts were unavailing, the Bohns commenced the present section 1983 action.
 
 
 34
 The Bohns contend that this drawn-out quest for relief through administrative review violates their due process rights. Although this Court has not previously addressed this issue, we find guidance in decisions of other courts in analogous cases discussing official misrepresentation regarding appeal rights. Thus, when the Community Service Administration abolished many positions as part of a reduction-in-force due to shrinking appropriations, it was held to violate due process when the agency failed to notify an employee that voluntary retirement extinguished his right to appeal: "The agency's additional failure to inform him that a retirement election would preclude a later appeal denied him the right to consider this fact in making his decision." Covington v. Department of Health and Human Services, 750 F.2d 937, 943 (Fed.Cir.1984). That Court added, "A decision made 'with blinders on,' based on misinformation or a lack of information, cannot be binding as a matter of due process."
 
 
 35
 The Covington Court relied on Shubinsky v. United States, 488 F.2d 1003, 203 Ct.Cl. 199 (1973), which also involved termination of a government employee. When the general notification of reduction-in-force was issued, it erroneously advised employees that the United States Civil Service Commission would not consider employee appeals. Although the employee's specific notice allowed an appeal of his termination, he did not appeal because his agency had been "liquidated." In deciding in favor of the employee, the Court held:
 
 
 36
 Having misrepresented by written notice the factors material to plaintiff's preference-eligible rights, it became incumbent upon defendant to rectify such misrepresentation in similar written form. This defendant failed to do. Instead, defendant continued to represent to plaintiff, even after the issuance of the specific notice of RIF, that [his laboratory] had been "disestablished," rather than "reorganized" (as in its notice of July 1, 1970 extending plaintiff temporary retention on government payroll for a period equal to his accumulated sick leave).
 
 
 37
 Id. at 1006.
 
 
 38
 Similarly, in another case considering allegations of unlawful overcharges in natural gas contracts, the Temporary Emergency Court of Appeals held:
 
 
 39
 When an agency itself has explicitly represented that reconsideration is not available after a certain type of ruling, and its regulations are not clearly to the contrary, resort to an otherwise available judicial remedy should not be precluded for failure to exhaust administrative remedies.
 
 
 40
 Air Products & Chemicals, Inc. v. United Gas Pipeline, 503 F.2d 1060 (Temp.Em.Ct.App.1974).
 
 
 41
 On the other hand, the Seventh Circuit has held that exhaustion requirements may be imposed where complainants had notice of available review procedures and did not exercise their option:
 
 
 42
 The availability of recourse to a constitutionally sufficient administrative procedure satisfies due process requirements if the complainant merely declines or fails to take advantage of the administrative procedure. * * * [A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them [sic].
 
 
 43
 Dusanek v. Hannon, 677 F.2d 538, 542-43 (7th Cir.), cert. denied, 459 U.S. 1017, 103 S.Ct. 379, 74 L.Ed.2d 512 (1982).
 
 
 44
 In the circumstances, we cannot say that the state's administrative review procedures were so opaque or that state officials so misrepresented the availability of the procedures that the Bohns' attorney ought not to have been able to ascertain the proper method for obtaining review. Regarding the complexity of the procedures as set out in the statutes and administrative regulations, we agree with the Bohns' attorney that the regulations, as codified in MCAR, were difficult to locate. Nevertheless, as an attorney, he had the duty to his clients to inform himself thoroughly regarding the law and supporting administrative regulations. We find it unpersuasive to suggest that a due-process defect lies in the absence of a cross-reference citation to the section of the state APA when Chapter 13 refers to the APA by name as the proper vehicle for administrative review. In addition, we believe that the statutory authorization for the chief hearing examiner to promulgate regulations should have put the Bohns' attorney on notice that the regulations were publicly available to assist claimants and their attorneys. In any event, the problem should have been solved no later than January, 1983, when, six months after the alleged abuse, attorneys for the County cited the specific statutory provisions under which the Bohns could seek administrative relief.
 
 
 45
 The state's erroneous misrepresentations present a slightly more difficult problem, but they, too, do not rise to the level of a due process deprivation. Simply put, the Bohns' attorney asked the wrong question and got the right answer. In his letter to the State Department of Public Welfare, the attorney asked for an appeal under section 256.045, which covers appeals for denial of benefits. Although he requested an appeal under any other statute as well, he sought a termination of benefits, not a review of the data underlying the finding of child abuse; and although the state official might have drawn the right conclusion, we cannot say, from that request, that it was a denial of due process if he failed to do so.
 
 
 46
 After January, 1983, when the Bohns' attorney belatedly learned of the data practices statute, he should have been on notice of the relevant appeal procedures. Although the County Department made no reference to available appeal procedures, the statute under which the Bohns had sought correction includes the provision, "The determination of the responsible authority may be appealed pursuant to the provisions of the administrative procedure act relating to contested cases." Minn.Stat.Ann. Sec. 13.04, subd. 4. Relying on his professional instincts and training, the Bohns' attorney ought reasonably to have consulted this section. After seeing reference to the promulgation of rules, Minn.Stat.Ann. Sec. 14.51, he ought reasonably to have sought out the applicable volume of MCAR or to have contacted the appropriate state officials, which he finally did in February, 1984, to learn about the state regulations governing appeal of contested cases.
 
 
 47
 We do not comment on the alleged oral misdirections by various state or county officials because they are not a part of this record. The other instances of miscommunication between the Bohns' attorney and state or county officials resemble the two exchanges of correspondence we have just discussed: either the Bohns' attorney asked the wrong question or did not pursue the full implications of the information he obtained. Under the circumstances, then, we cannot say that these misdirections contributed to a due process violation.
 
 
 48
 We add, however, that this holding is confined by the facts of this case. As in some of the termination cases we have cited, more serious misdirection by state officials which nullifies a complainant's right to appeal might well contribute to a due process violation. Had the Bohns not had an attorney who was trained to read and interpret complex statutes, we well might have reached a different result. See United States v. Boyle, --- U.S. ----, ----, 105 S.Ct. 687, 692, 83 L.Ed.2d 622 (1985).[7] Perhaps most important, if the Bohns were permanently foreclosed from offering at a hearing the evidence they claim exonerates them, we might reach a different result. But the attorney for the County, in his brief before this Court, has represented that, during the pendency of their section 1983 action, the Bohns "were advised that [administrative review] procedures were still available. These procedures remain available to appellants even today[.]" From this, we conclude that the County is willing to participate in the panoply of procedures we have set forth in this opinion and to allow the Bohns a full hearing to present the evidence they say will set the record straight.
 
 
 49
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 The statute implicated in this challenge of the finding of child abuse is Minn.Stat.Ann. Sec. 626.556. In brief, the statute requires that certain professionals report suspected instances of child abuse to responsible county authorities who investigate the report and, if warranted, offer "protective social services" and "maintain appropriate records." We discuss relevant portions of this statute in section II, below
 
 
 [2]
 In addition to Minn.Stat.Ann. Sec. 626.556, the statutes implicated in the Bohns' challenge to the administrative procedures for reviewing this finding include Minn.Stat.Ann. Secs. 13.04 and 14.57-14.70 as well as certain administrative rules. We discuss relevant portions of these provisions in section IV, below
 
 
 [3]
 The allegedly abused Bohn boy was examined by a physician who found no evidence of abuse or injury
 
 
 [4]
 We also note that the Bohns have a protectible interest in their reputations at stake in this case. By identifying the Bohns as child abusers, investigating the quality of their family life, and maintaining data on them, the County Department exposed them to public opprobrium and may have damaged their standing in the community
 In Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court held that "Where the State attaches a 'badge of infamy' to the citizen, due process comes into play. * * * Where a person's good name, reputation, honor or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." Id. at 437, 91 S.Ct. at 510. The Court subsequently interpreted Constantineau in Paul v. Davis, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405: "We think that [the language] * * * 'because of what the government is doing to him,' referred to the fact that the governmental action taken in that case deprived the individual of a right previously held under state law[.]" In Paul, the Court concluded that state law did not protect respondent from publication of the fact of his arrest for shoplifting.
 In light of the protectible family interests we have set forth above, however, we read Constantineau as controlling in this case and we distinguish Paul. When the County Department found Bohn to be a child abuser, it drove a wedge into this family and threatened its very foundation. The stigma Mr. Bohn suffers as a reported child abuser undoubtedly has eroded the family's solidarity internally and impaired the family's ability to function in the community. In light of these clear adverse effects on familial integrity and stability, we find that Mr. Bohn's reputation is a protectible interest. Because this stigma strikes so directly at the vitality of the family, we find the reputation interest at stake to be clearly distinguishable from the respondent's record of petty crimes in Paul, which was tied to no other protectible interest.
 
 
 [5]
 "Responsible authority" is defined, for political subdivisions, as "the individual designated by the governing body of that political subdivision as the individual responsible for the collection, use, and dissemination of any set of data[.]" Minn.Stat.Ann. Sec. 13.02, subd. 16
 
 
 [6]
 Minn.Stat.Ann. Sec. 256.045 provides for state agency hearings for applicants for public assistance whose application "is denied, not acted upon with reasonable promptness, or whose assistance is suspended, reduced, terminated, or claimed to have been incorrectly paid." On its face, the statute does not apply to the Bohns' situation, as noted by the state official who responded to the Bohns' attorney
 
 
 [7]
 When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice. Most taxpayers are not competent to discern error in the substantive advice of an accountant or attorney. To require the taxpayer to challenge the attorney, to seek a "second opinion," or to try to monitor counsel on the provisions of the Code would nullify the very purpose of seeking the advice of a presumed expert in the first place
 United States v. Boyle, --- U.S. at ----, 105 S.Ct. at 693.