Jack M. WATSO, Clark Gabriel, Michael Hannah, Sr., Irwin Zook, Edward T. Urias, Laura E. Dickerson, and Dennis C. Whitcomb, Plaintiffs–Appellants,

v.

**COLORADO DEPARTMENT OF SOCIAL SERVICES,** Defendant–Appellee.

**No. 91SA456.**

Supreme Court of Colorado, En Banc.

Nov. 23, 1992.

Stayton, Dole & Simpson, P.C., Rowe P. Stayton, Denver, for plaintiffs-appellants.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Paul Farley, Deputy Atty. Gen., Wade Livingston, First Asst. Atty. Gen., Vivianne Chaumont Oates, Asst. Atty. Gen., Denver, for defendant-appellee.

Justice KIRSHBAUM delivered the Opinion of the Court.

Appellants, Jack M. Watso, Clark Gabriel, Michael Hannah, Sr., Irwin Zook, Edward T. Urias, Laura E. Dickerson, and Dennis C. Whitcomb (hereafter collectively referred to as the appellants),[1] appeal the trial court's order granting a motion for summary judgment filed by appellee, the Colorado Department of Social Services (the Department), in this civil action for declaratory and injunctive relief.[2] The trial

---

1. Although the complaint contains allegations that the appellants represent themselves and all others similarly situated, subsequent pleadings establish that the appellants seek relief individually and not on behalf of members of any class. *See* C.R.C.P. 23.

2. The appellants originally appealed the trial court's decision to the Court of Appeals. The Department then moved to transfer the case to this court, arguing that the Court of Appeals lacked jurisdiction over appeals in which the constitutionality of a statute is the question. On December 17, 1991, the Court of Appeals re-

court concluded that, contrary to the appellants' allegations, certain provisions of the Child Protection Act of 1987 (the Act), §§ 19–3–301 to –316, 8B C.R.S. (1988 Supp.),[3] did not violate federal or state constitutional guarantees of procedural due process of law and were not unconstitutionally vague. We affirm the trial court's judgment.

## I

The appellants filed a civil action against the Department on July 1, 1988, seeking a declaration that the Act deprived them of rights protected by the due process clauses of the United States[4] and Colorado[5] Constitutions and requesting an injunction prohibiting enforcement of its provisions by the Director of the Department (the director). The parties submitted the following pertinent stipulated facts in the course of the proceedings.

Each named appellant was at some time listed on the Central Registry for Child Protection (the registry) as a perpetrator of sexual or physical abuse of a child as the result of a report made to a county department of social services or a local law enforcement agency.[6] With the exception of Watso and Urias, each appellant's name was ultimately expunged from the registry.[7] Although no criminal charges were filed against Watso, an administrative law judge found substantial evidence that Watso had sexually assaulted and physically abused his adopted daughter. The administrative law judge affirmed the director's decision not to expunge the report from the registry. Urias requested the director to expunge a report that Urias had repeatedly sexually assaulted Urias' niece and did not seek administrative review of the director's denial of that request.

Dickerson's name appeared on the registry as the result of a report that she had physically abused her daughter. Criminal charges against Dickerson were dismissed and the registry report was expunged prior to an administrative hearing. Gabriel's name appeared on the registry as the result of a report by his step-daughter that he had sexually abused her. The director expunged the report from the registry prior to an administrative hearing.

Hannah's name was placed on the registry as the result of a report of sexual abuse on a child stemming from allegations made by Hannah's mother-in-law.[8] Criminal charges filed against Hannah were later dismissed prior to trial and Hannah's name was expunged from the registry. Zook's name appeared on the registry as a result of a report of his conduct with respect to a teenage boy. An administrative law judge determined that the conduct constituted appropriate father/son activity in view of Zook's religious and cultural background and ordered the report expunged from the registry.

The stipulation of facts contains a statement by Whitcomb that his name was

quested this court to resolve the jurisdictional issues raised by the appeal. § 13–4–110(1)(a), 6A C.R.S. (1987). On December 31, 1991, this court accepted jurisdiction over the case.

3. The General Assembly has adopted several amendments to the Act since 1988. Our analysis is limited to the provisions of the Act in effect at the time the complaint was filed.

4. *See* U.S. Const. amends. V, XIV.

5. *See* Colo. Const. art. II, § 25.

6. The registry is established by § 19–3–313(1), 8B C.R.S. (1988 Supp.), which states in pertinent part as follows:
   **Central registry.** (1) There shall be established a state central registry of child protection in the state department for the purpose of maintaining a registry of information concerning each case of confirmed child abuse reported under this part 3 . . . .
   Section 19–3–307(1), 8B C.R.S. (1988 Supp.), provides that a report made pursuant to § 19–3–313(1) shall be "followed promptly by a written report prepared by those persons required to report."

7. Section 19–3–313(7), 8B C.R.S. (1988 Supp.), authorizes the subject of any report to request the director of the Department to "amend, seal or expunge the record" of any report of confirmed child abuse or neglect. Section 19–3–313(13), 8B C.R.S. (1988 Supp.), authorizes a subject whose request for expungement is denied by the director to obtain review of such denial pursuant to the State Administrative Procedure Act, § 24–4–106, 10A C.R.S. (1988).

8. The record does not disclose the nature of the relationship between Hannah and the child.

placed on the registry in 1985 "based on reports that he bathed with his daughters ... and had sexually explicit material in his home" and the Department's statement that "the report was based on allegations that Mr. Whitcomb had his daughters present during intercourse with his wife and on his daughters' statements that they were sexually abused by their father." Criminal abuse charges against Whitcomb and a dependency and neglect proceeding in which he was involved were dismissed, and the report was ultimately expunged from the registry because all parties felt that it was in the best interests of the children not to proceed to hearing.

On the basis of these stipulated facts, the appellants filed a brief with the trial court supporting their argument that the Act violated constitutional standards and the Department filed a motion for summary judgment. The trial court granted the Department's motion. The trial court concluded that the appellants failed to establish any constitutionally cognizable property interests, but that some of them had established protected liberty interests. The trial court also determined that the Act did not unduly restrict those liberty interests and that the Act was not unconstitutionally vague. The appellants have appealed the trial court's judgment.

## II

Resolution of the issues raised by the appellants requires examination of several sections of the Act and relevant regulations adopted by the Department. In general, the Act establishes "a state central registry of child protection in the [Department] for the purpose of maintaining a registry of information concerning each case of confirmed child abuse reported [pursuant to the Act]...." [9] § 19-3-313(1), 8B C.R.S. (1988 Supp.). It identifies persons who are required to or who may report or cause a report to be made of known or suspected child abuse or neglect if such person "has reasonable cause to know or suspect that a child has been subjected to abuse or neglect or who has observed the child being subjected to circumstances or conditions which would reasonably result in abuse or neglect." § 19-3-304(1)-(3), 8B C.R.S. (1988 Supp.). The reports are to be made "immediately" to a county department of social services or a local law enforcement agency, id., to be followed "promptly by a written report prepared by those persons required to report." § 19-3-307(1), 8B C.R.S. (1988 Supp.).

The county department must "make a thorough investigation immediately upon receipt" of a required report, the immediate concern of which "shall be the protection of the child." § 19-3-308(1), 8B C.R.S. (1988 Supp.). The county department must forward a copy of its own report of "confirmed" child abuse or neglect to the registry within sixty days of the receipt of the initial report. § 19-3-307(1), 8B C.R.S.

---

**9.** The term "child abuse or neglect" is defined for purposes of the Act as follows:

(1)(a) "Abuse" or "child abuse or neglect" means an act or omission in one of the following categories which threatens the health or welfare of a child:

(I) Any case in which a child exhibits evidence of skin bruising, bleeding, malnutrition, failure to thrive, burns, fracture of any bone, subdural hematoma, soft tissue swelling, or death and either: Such condition or death is not justifiably explained; the history given concerning such condition is at variance with the degree or type of such condition or death; or the circumstances indicate that such condition may not be the product of an accidental occurrence;

(II) Any case in which a child is subjected to sexual assault or molestation, sexual exploitation, or prostitution;

(III) Any case in which a child is a child in need of services because the child's parents, legal guardian, or custodian fails to take the same actions to provide adequate food, clothing, shelter, medical care, or supervision that a prudent parent would take. The requirements of this subparagraph (III) shall be subject to the provisions of section 19-3-103. § 19-3-303(1)(a), 8B C.R.S. (1988 Supp.). In addition, the Act contains the following pertinent provision:

(b) In all cases, those investigating reports of child abuse shall take into account accepted child-rearing practices of the culture in which the child participates. Nothing in [the subsection defining abuse or child abuse or neglect] shall refer to acts which could be construed to be a reasonable exercise of parental discipline....
§ 19-3-303(1)(b), 8B C.R.S. (1988 Supp.).

(1988 Supp.). The Act contains the following definition of the term "confirmed":

"Confirmed" means that credible evidence exists to support that child abuse or neglect did occur.

§ 19–3–303(2.5), 8B C.R.S. (1988 Supp.).

If a local law enforcement agency receives a report of a known or suspected incident of child abuse or neglect, it is required to forthwith attempt to contact the county department of social services and refer the case to that agency for investigation. § 19–3–308(5), 8B C.R.S. (1988 Supp.). If such communication is not possible, the local law enforcement agency is authorized to make an investigation and, upon completion thereof, forward a summary of the investigatory data plus all relevant documents to the county department of social services. *Id.* All reports must include the names and addresses of perpetrators of the suspected abuse or neglect, if known, and the family compositions. § 19–3–307(1)(d), (e), 8B C.R.S. (1988 Supp.).

The registry shall contain all information in any written report of confirmed child abuse or neglect. § 19–3–313(2)(a), 8B C.R.S. (1988 Supp.). Upon receipt of any such confirmed report, the Department, pursuant to its own regulations, is required to give notice of that fact to the named perpetrator. 12 C.C.R. 2509–6, § 7.501.55, Department of Social Services Regulations. Any named perpetrator has access to any registry document wherein such person is listed. § 19–3–313(6), 8B C.R.S. (1988 Supp.).

Any subject of a report may petition the director to expunge such report. § 19–3–313(7), 8B C.R.S. (1988 Supp.). The director's decision upon that request shall be based on the investigation made by the county department of social services or, if applicable, the local law enforcement agency. *Id.* If the director refuses such request or fails to act thereupon within a reasonable time, but in no event later than thirty days after any such request, the named perpetrator is entitled to an administrative hearing pursuant to the State Administrative Procedure Act, § 24–4–106,

10A C.R.S. (1988), and, when applicable, to seek judicial review of the decision of the administrative law judge. § 19–3–313(7)–(13), 8B C.R.S. (1988 Supp.).

### III

The appellants initially claim that the Act, and particularly the provisions thereof establishing the registry, deprive them of property and personal interests protected by federal and state due process guarantees. They assert that because their names appear or have appeared on the registry, they may be screened by potential employers should they seek work in day care or child placement facilities and, as a result of such screening, may lose potential employment opportunities. They also contend that the inclusion of their names on the registry violates or has violated their liberty interests in maintaining the stability of their families. We reject these arguments.

### A

Statutes are presumed to be constitutional, and one challenging the validity of a statute has the burden of proving the statute to be unconstitutional beyond a reasonable doubt. *People v. Fuller,* 791 P.2d 702 (Colo.1990); *Anderson v. State Dep't of Personnel,* 756 P.2d 969 (Colo.1988). The Fourteenth Amendment to the United States Constitution and article II, section 25 of the Colorado Constitution protect individuals from arbitrary governmental restrictions on property and liberty interests. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Coleman v. Darden,* 595 F.2d 533 (10th Cir.), *cert. denied,* 444 U.S. 927, 100 S.Ct. 267, 62 L.Ed.2d 184 (1979); *People v. Chavez,* 629 P.2d 1040 (Colo.1981). In addressing due process issues, courts employ a bifurcated analysis requiring an initial delineation of the nature and extent of the asserted interest and, in the event that interest is constitutionality protected, an evaluation of the adequacy of the challenged process. *Chavez,* 629 P.2d at 1045.

With these principles in mind, we must determine initially whether the property and liberty interests asserted by the appellants enjoy constitutional protection. The due process clauses of the federal and state constitutions protect individuals and entities from immediate governmental interference with present property interests—not possible governmental interference with potential property interests. The United States Supreme Court explained this distinction in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), as follows:

> The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits....
>
> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. There must be more than a unilateral expectation of it. That person must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.

*Id.* at 577, 92 S.Ct. at 2708–09. Thus a person claiming an unfair governmental deprivation of an interest in property must possess more than an anticipation of ownership of property. *Id.; Rich v. Secretary of the Army*, 735 F.2d 1220, 1226 (10th Cir.1984); *Asbill v. Housing Auth. of the Choctaw Nation*, 726 F.2d 1499, 1501 (10th Cir.1984).

In this case, the appellants have not alleged that the inclusion of their names on the registry has in any manner interfered with their present occupations.[10] In fact, the record does not contain evidence of what those occupations are. Rather, the appellants assert that such inclusion could jeopardize future efforts by them to obtain employment in day care centers or licensed care facilities. Their anticipations of potential job situations do not constitute property interests for purposes of constitutional due process protections.

**B**

The appellants also assert that the Act impermissibly restricts their protected liberty interests in reputation and familial relationships. They rely on *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and *Bohn v. County of Dakota*, 772 F.2d 1433 (8th Cir.1985), in support of this argument.

In *Constantineau*, a Wisconsin citizen challenged a Wisconsin statute authorizing designated persons to post in retail liquor stores names of individuals to whom alcohol could not be sold. The United States Supreme Court determined that the statute violated federal due process guarantees because it failed to provide notice and a hearing prior to the determination that a person was subject to its provisions. In reaching this conclusion, the Court described the liberty interest affected by the statute as follows: "Where the state attaches a 'badge of infamy' to the citizen, due process comes into play.... Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Constantineau*, 400 U.S. at 437, 91 S.Ct. at 510.

The Court subsequently qualified *Constantineau* in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Davis*, two chiefs of police circulated flyers to merchants containing names and pictures of individuals allegedly engaged in

---

**10.** The Act contains numerous provisions providing for the confidentiality of information contained in reports and limiting access to information contained in the registry. § 19–3–314, 8B C.R.S. (1988 Supp.). However, an operator of a day care center or a residential child care facility, a day care child facility or a preschool may obtain certain information about persons listed on the registry by requesting the Department, a county department of social services or a child placement agency to furnish such information to the operator for the purpose of screening a current employee or an applicant for employment. § 19–3–314(2)(k)(I), 8B C.R.S. (1988 Supp.).

shoplifting activities.[11] The plaintiff, whose name and picture were included in the flyer,[12] filed a civil rights suit against the police officials, pursuant to 42 U.S.C. § 1983, seeking declaratory relief, injunctive relief and damages. Viewing the complaint as alleging only an injury to the plaintiff's reputation, analogous to a state law tort action for defamation, the Court held that the complaint failed to allege facts that would establish a deprivation of a right secured by the federal Constitution. In limiting *Constantineau* to circumstances wherein a person has suffered an alteration of legal status in addition to defamation, the Court concluded that injury to reputation alone, absent some additional injury to a right or status established by state law, does not constitute a deprivation of any liberty or property interest for federal due process purposes. *Davis,* 424 U.S. at 702, 96 S.Ct. at 1161.

■ In this case, the appellants do not allege that any specific status or right conferred by Colorado law has been violated. Their repeated allegations that the conduct giving rise to the inclusion of their names in the registry took place in familial contexts does not delineate specific state-created rights. To the extent the complaint alleges injuries to reputation only, it fails to satisfy the *Davis* criteria.

■ The appellants contend, however, that the Act interferes with a liberty interest quite distinct from reputation—the right to privacy with respect to family matters. They do not clearly articulate the family interests allegedly restricted. Their brief simply states that "[i]n most instances, the alleged abuses or neglect occurred in a family setting" and that "the inclusion

of individual perpetrators of child abuse is done in the context of a family setting." Neither the pleadings nor the stipulated facts indicate the nature or characteristics of the "family setting" to which they refer. However, the record does establish that appellants Watso, Gabriel, Zook, Dickerson and Whitcomb were accused of conduct involving their own children or step-children.[13] Those five appellants, who hereafter will be referred to collectively as "the plaintiffs," in essence assert that the state's conduct in listing their names on the registry impermissibly interfered with their parental interests in raising children in an autonomous and stable family unit. Appellants Urias and Hannah have not established any cognizable interests for purposes of due process protections.[14]

The interest of a parent in maintaining the stability and autonomy of the family unit has been recognized as a protected interest for purposes of constitutional analysis. In *Bohn v. County of Dakota,* 772 F.2d 1433 (8th Cir.1985), the Eighth Circuit Court of Appeals held that the plaintiffs' due process liberty interests in the privacy and autonomy of familial relationships had been abridged by a Minnesota statute quite similar in substance to the Act here challenged.[15] Stating that no more important or basic relationship exists in American society than that of parent and child, the court made the following pertinent observations:

> When the County Department found Bohn to be a child abuser, it drove a wedge into this family and threatened its foundation. The stigma Mr. Bohn suffers as a reported child abuser undoubt-

---

**11.** The flyer contained the statement that the named persons "had been arrested ... or have been active in various criminal fields in high density shopping areas." *Davis,* 424 U.S. at 695, 96 S.Ct. at 1158.

**12.** At the time the flyers were circulated the plaintiff had been charged with shoplifting. Shortly after the flyers were circulated, the charge was dismissed.

**13.** Urias was accused of sexually abusing his niece. As previously observed, the stipulated facts do not indicate the nature of the relation-

ship between Hannah and the alleged victim. *See* note 8.

**14.** The trial court concluded that some of the appellants had failed to establish protected liberty interests. However, its order did not specify which or how many of them, in its view, had not established such interests, and the single brief filed in this appeal on behalf of the appellants does not address this aspect of the trial court's judgment.

**15.** *See* Minn.Stat.Ann. § 626.556 (West 1982).

edly has eroded the family's solidarity internally and impaired the family's ability to function in the community. In light of these clear adverse effects on familial integrity and stability, we find that Mr. Bohn's reputation is a protectible [sic] interest. Because this stigma strikes so directly at the vitality of the family, we find the reputation interest at stake to be clearly distinguishable from the respondent's record of petty crimes in *Paul*, which was tied to no other protectible [sic] interest.

*Bohn*, 772 F.2d at 1436 n. 4. Having concluded that the plaintiffs' liberty interests were constitutionally protected, the court held that the statute's procedural provisions satisfied the requirements of the Due Process Clause of the Fourteenth Amendment.

In *Sims v. State Dep't of Pub. Welfare*, 438 F.Supp. 1179 (S.D.Tex.1977), the plaintiffs asserted that a Texas statute establishing a central registry of "confirmed" child abusers violated federal due process guarantees. In determining that the statute impermissibly restricted a protected liberty interest, the court recognized that "it is now clear that there is a fundamental right emanating from the [United States] Constitution, which protects the integrity of the family unit from unwarranted intrusions by the state." *Id.* at 1190.

The conclusions reached in *Bohn* and *Sims* are compatible with several determinations reached by the United States Supreme Court in varied contexts. The rights to conceive and to raise one's children have been deemed "essential," *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626–27, 67 L.Ed. 1042 (1923), one of the "basic civil rights of man," *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and rights "far more precious ... than property rights," *May v. Anderson*, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953). *See also Moore v. East Cleveland*, 431 U.S. 494, 504, 97 S.Ct. 1932, 1938, 52 L.Ed.2d 531 (1977) ("[t]he tradition of uncles, aunts, cousins, and especially grandparents sharing a household along with parents and children has roots equally venerable and equally deserving of constitutional recognition."); *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639–40, 94 S.Ct. 791, 796, 39 L.Ed.2d 52 (1974) (freedom of personal choice in matters of ... family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (the interest of a widower "in the children he has sired and raised, undecidedly warrants deference and, absent a powerful countervailing interest, protection"); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944) (the custody, care and nurture of children reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder). In view of these authorities, we conclude that the plaintiffs' interests as parents responsible for maintaining the stability and autonomy of their family relationships are rights subject to the protection of procedural due process standards.

### C

Recognition that the plaintiffs have established constitutionally protected liberty interests leads to consideration of the second prong of the due process test: whether the procedural provisions adopted by the state sufficiently protect those interests. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *People v. Kibel*, 701 P.2d 37, 43 (Colo.1985).

■ Because the basic requirement of due process is fundamental fairness, the adequacy of particular procedural protections necessarily must be considered in view of the circumstances of each particular case. *Morrissey*, 408 U.S. at 481, 92 S.Ct. at 2600; *Kibel*, 701 P.2d at 43. To determine whether a particular statutory process is fundamentally fair, we employ a balancing test enunciated by the United States Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). *Kibel*, 701 P.2d at 43. That test requires consideration of three factors: (1) the importance of the

individual interest at stake; (2) the weight of the governmental interest in retaining the challenged procedures, including the interest in avoiding increased administrative and fiscal burdens; and (3) the degree to which proposed alternative procedures will lessen the risk of an erroneous deprivation of the individual's liberty or property. This approach recognizes the interests of the state in establishing the challenged procedures as well as protected interests affected by such procedures.

With respect to the first prong of the *Mathews* test, it is clear that the rights asserted by the plaintiffs do not include rights to abuse or neglect children. The Act recognizes the responsibility of the state to protect the interests of children while simultaneously furthering the stability of family relationships by providing various safeguards to ensure accuracy and alacrity in reporting and responding to allegations of child abuse or neglect. Viewed in this perspective, the Act does not unduly deprecate the importance of the plaintiffs' interests in maintaining the stability and autonomy of their family relationships.

With respect to the second and third prongs of the *Mathews* test, the plaintiffs challenge the Act's provisions permitting the inclusion of their names on the registry without first affording them an opportunity to challenge the administrative determination transforming an initial report to a confirmed report. While acknowledging the availability of both administrative and judicial review proceedings under the Act, the plaintiffs contend that such procedures are constitutionally inadequate.

We have previously outlined the procedures established by the Act for expedited administrative responses to initial reports of alleged child abuse or neglect. Any confirmed report is the product of a thorough investigation by administrative personnel pursuant to statutory evidentiary standards, must be completed rapidly, and is potentially subject to analysis by the director. Any decision by the director not to expunge a report is subject to independent administrative and, ultimately, judicial review. These provisions provide substantial procedural protection for any person who is the subject of a report of suspected child abuse or neglect.

The plaintiffs do not challenge the provisions of the Act authorizing county departments of social services to enter family residences, to interview family members, or to remove suspected victims of child abuse from family settings. They assert only that they are entitled to an adversary proceeding prior to the inclusion of their names as suspects on the registry. They thus assert they have been denied procedural protections guaranteed by the due process clauses of the United States and Colorado Constitutions.

■ It is true that in most circumstances a state may not deprive persons of protected liberty interests without first affording such persons meaningful opportunities to prevent such governmental action. *Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600; *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786–87, 28 L.Ed.2d 113 (1971); *see Anti–Fascist Refugee Comm. v. McGrath,* 341 U.S. 123, 168, 71 S.Ct. 624, 646–47, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring). However, when a state can demonstrate necessity for immediate action to protect a legitimate interest of its own, adequate post-deprivation hearings may satisfy due process standards. *See, e.g., Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979) (state's interest in ensuring integrity of horse racing industry justifies statutory scheme permitting immediate suspension of trainer's license pending subsequent administrative hearings); *Bohn v. County of Dakota,* 772 F.2d 1433 (8th Cir.1985) (state's interest in protecting children sufficiently strong to warrant legislative decision to provide effective ex-post-facto administrative hearing procedures); *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir.) (tenured high school principal not denied due process by unavailability of hearing prior to allegedly coerced resignation when such a hearing was not feasible and state's post-deprivation remedies were adequate), *cert. denied,* 469 U.S. 932, 105 S.Ct. 328, 83 L.Ed.2d 265 (1984); *Duchesne v. Sugerman,* 566 F.2d 817, 826 (2d Cir.1977)

(in light of statutory provision of adequate post-removal proceedings, state's interest in protection of children from abusive environment sufficiently substantial to permit removal of children from injurious environment prior to judicial or administrative proceedings).

■■■ In this case, the state has a substantial interest in ensuring that children are not subject to abuse or neglect. Inclusion on the registry of persons known or suspected to have neglected or abused children is reasonably related to that interest. Furthermore, the Act provides that confirmed reports of child abuse or neglect filed in the registry shall be confidential, shall not be public information, and can be accessed only in limited circumstances. *See* § 19–3–314(1)(a), (2)(a)–(k), 8B C.R.S. (1988 Supp.). The Act thus recognizes the privacy interests of suspects as well as the state's interest in quickly identifying and recording on the registry the names of suspected perpetrators of child abuse or neglect to prevent further instances of such conduct.

The availability of an adversary proceeding prior to the inclusion of confirmed reports on the registry would provide heightened protection for the liberty interests of alleged perpetrators, and the fiscal burdens of such procedures would no doubt prove minimal. However, the availability of such hearings as a prerequisite to the inclusion of a suspect's name on the registry would frustrate the legitimate legislative goal of encouraging quick action to protect children from child abuse or neglect by diverting administrative resources from efforts to protect children. *See Bohn,* 772 F.2d at 1439. In our view, the state's interest in protecting children from actual or potential abuse or neglect is sufficiently significant to justify the absence of any adversary proceeding prior to the filing of a confirmed report with the registry in view of all of the procedural safeguards contained in the Act.

After considering the factors enunciated in *Mathews,* we are satisfied that the procedural provisions of the Act here challenged adequately protect the plaintiffs' liberty interests insofar as they are affected by the inclusion of their names on the registry. In these circumstances, the plaintiffs have not been denied due process of law.

## IV

The plaintiffs also contend that the Act must be declared void because it contains certain impermissibly vague definitions and standards. We disagree.

■■■ A statute that forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to its application violates due process protections afforded by the United States and Colorado Constitutions. *Schad v. Arizona,* —— U.S. ——, ——, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991); *Roberts v. United States Jaycees,* 468 U.S. 609, 629, 104 S.Ct. 3244, 3256, 82 L.Ed.2d 462 (1984); *Smith v. Charnes,* 728 P.2d 1287, 1290 (Colo.1986). Statutory prohibitions must, therefore, contain language that provides fair notice of what conduct is prohibited and provides enforcement authorities with sufficiently definite standards to ensure uniform, non-discriminatory enforcement of those prohibitions. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Regency Servs. v. Board of County Comm'rs,* 819 P.2d 1049, 1055 (Colo.1991); *Sellon v. City of Manitou Springs,* 745 P.2d 229, 233 (Colo.1987).

■■■ However, statutory standards frequently contain broad terms to ensure their applicability to varied circumstances. *People v. Becker,* 759 P.2d 26, 31 (Colo.1988). Generality is not the equivalent of vagueness. Neither scientific nor mathematical certainty is required. *Sellon,* 745 P.2d at 233. A statute does not contravene due process standards and is not void for vagueness if it fairly describes proscribed conduct in terms that enable persons of common intelligence to readily understand its meaning and application. *People v. Stevens,* 761 P.2d 768 (Colo.1988); *Smith v. Charnes,* 728 P.2d 1287 (Colo.1986).

■ The plaintiffs' void-for-vagueness arguments are addressed to what they allege are impermissibly broad standards governing various administrative determinations. They assert that the language of section 19–3–303(1)(b), 8B C.R.S. (1988 Supp.), requiring administrators investigating reports of child abuse or neglect to consider "accepted child-rearing practices of the culture in which the child participates" establishes a subjective standard for determining whether a child has been abused or neglected and consequently prevents a person from knowing what conduct constitutes child abuse or neglect prior to the conclusion of the investigation. The plaintiffs also contend that the provision in section 19–3–313(4) requiring reports to be confirmed by "some credible evidence" improperly conflicts with provisions in section 19–3–313(7), 8B C.R.S. (1988 Supp.), that in essence establish a preponderance of the evidence standard for review proceedings conducted pursuant to the State Administrative Procedure Act. The plaintiffs finally argue that the provision in section 19–3–313(5), 8B C.R.S. (1988 Supp.), authorizing expungement from the registry of the names of a perpetrator for "good cause," establishes another subjective standard that invites impermissible ad hoc determinations. These arguments are not persuasive.

The language of section 19–3–303(1)(b), 8B C.R.S. (1988 Supp.), referring to culturally based family rearing and disciplinary practices is necessarily phrased in general terms. By requiring an objective evaluation of reported conduct in light of behavioral patterns common to particular cultural traditions, the statute recognizes the diversity of traditions that characterizes our society. More precise criteria to enhance conformity in the administration of the Act may, of course, be developed by the Department through its rule-making authority. We conclude that the terms here challenged, although general in nature, are sufficiently precise to permit persons of com-

mon intelligence to understand their meaning.

The plaintiffs' argument that the Act impermissibly establishes two different evidentiary standards is also unpersuasive. Section 19–3–313(4), 8B C.R.S. (1988 Supp.), provides that a report may be confirmed only if the allegations contained therein are supported by "credible evidence."[16] A subject of a report may request the director to amend, seal, or expunge the record of the report; the director's refusal to do so or the director's failure to act within thirty days of such a request gives the subject the right to a hearing under the State Administrative Procedure Act. § 19–3–313(7), 8B C.R.S. (1988 Supp.). At such review hearing, the appropriate county department of social services has the burden of proving by a preponderance of the evidence that the report is accurate and is being maintained in a manner consistent with the statute. *Id.* While the standards differ, they are applicable to two entirely different proceedings. The credible evidence standard directs the action of the county departments and the director in assessing initial reports for purposes of confirmation. The latter standard is applicable in administrative review proceedings initiated to challenge a decision of the director.

■ The plaintiffs' assumption that a party to a formal proceeding may not be required to assume different burdens of proof at different stages of the proceeding is untenable. For example, the prosecution must establish probable cause to believe the defendant committed an offense by a preponderance of the evidence at preliminary hearings. § 16–1–104(14), 8A C.R.S. (1986); *People v. Fisher*, 759 P.2d 33, 36 (Colo.1988). However, at trial the prosecution must prove the defendant's guilt beyond a reasonable doubt. *People v. Aalbu*, 696 P.2d 796, 809 (Colo.1985); *People v. Brassfield*, 652 P.2d 588, 593 (Colo.1982). The fact that the two standards differ does not render the process unconstitutional. In

---

16. In 1991, the Act was amended to require that reports are to be confirmed if the allegations contained therein are supported by a preponder-ance of the evidence. *See* ch. 37, sec. 3, § 19–3–303(2.5), now codified at § 19–3–303(2.5), 8B C.R.S. (1992 Supp.).

like vein, the two differing standards of proof required by the Act in two different contexts do not render the statute unconstitutionally vague.

■ The plaintiffs finally argue that the provisions of section 19–3–313(5), 8B C.R.S. (1988 Supp.), authorizing the director to amend, seal or expunge a record contained in the registry "upon good cause shown" permits the director to exercise a subjective evaluation of requests to expunge records. The term "good cause" connotes substantial or legal justification, as opposed to an assumed or imaginary pretense. *People v. Gillett*, 629 P.2d 613, 618 (Colo.1981); *Tucker v. People*, 136 Colo. 581, 586, 319 P.2d 983, 986 (1957). The good cause standard thus requires objective evaluation of different interests in varied factual contexts, and its application is subject to judicial review. *See, e.g., Cardiel v. Brittian*, 833 P.2d 748 (Colo.1992); *Cordova v. People*, 817 P.2d 66 (Colo.1991). Plaintiffs' argument is unpersuasive.

## V

For the foregoing reasons, we affirm the judgment of the trial court.